UNITED STATES, Appellee

v

WILLIAM C. TROGLIN, Aviation Electrician's Mate,
Second Class, U. S. Navy, Appellant

21 USCMA 183, 44 CMR 237

No. 24,223

February 18, 1972

Lieutenant *Charles W. Corddry, III,* JAGC, USNR, argued the cause for Appellant, Accused.

Lieutenant *James B. Ginty,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

Opinion of the Court

DUNCAN, Judge:

When the accused was initially brought to trial on January 16, 1969, he pleaded guilty to two specifications alleging absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and not guilty to a number of "bad check" offenses, in violation of Article 123a, Code, supra, 10 USC § 923a. On the fourth day of trial, the law officer *sua sponte* declared a mistrial over the objection of defense counsel.

In expressing his reason for declaring the mistrial, the law officer said:

"With the aggravation that has been brought into this case through the efforts of the defense counsel, I just feel that the accused would not receive that fair and impartial trial to which he is entitled under our system of justice, and if I should allow this case to go on to a valid conclusion I would only anticipate, and I feel reasonably so, a material question of adequacy would be raised on review. And I would rather strongly suspect that at some stage of the review this case would be returned for a rehearing."

On June 11, 1970, the accused again was brought to trial on the original charges and on an additional charge of absence without leave which allegedly had occurred after the mistrial had been declared. At this trial the accused pleaded guilty to all charges and specifications and was

sentenced to a bad-conduct discharge, confinement at hard labor for twelve months, forfeiture of $150.00 per month for a like period, and reduction to the pay grade of E–3. The convening authority approved the findings and sentence but suspended the bad-conduct discharge in accordance with the provisions of a pretrial agreement.

On August 18, 1970, the accused's case was filed with the Court of Military Review. No specific assignment of error was noted, the case was submitted on its merits, and oral argument was waived. Nine days later, *Troglin* moved to withdraw his submission of the case and requested an enlargement of time. The motion and request were granted and on November 4, 1970, appellant filed an assignment alleging as error that the pretrial agreement between the accused and the convening authority violated public policy because of the existence of an unwritten oral agreement that defense counsel would not raise the issues of double jeopardy or lack of a speedy trial. Together with the assignment the affidavit of defense counsel regarding the alleged oral agreement was submitted.[1] In his brief, the accused contended that the pretrial " 'understanding' " served to pre-

vent litigation of either issue at trial, "thus providing insufficient facts of record to meaningfully treat those issues on appeal."

The Court of Military Review returned the record of trial to the Judge Advocate General for remand to the convening authority for a full and complete inquiry into the facts surrounding the alleged agreement. Upon receipt of the results of the inquiry, the Court of Military Review affirmed the findings and sentence without change.

We granted review to consider the following question:

Whether the unwritten provisions of the so-called "gentlemen's agreement" between military defense counsel and certain officers in the office of the staff judge advocate violated public policy to the prejudice of the accused?

In its review of the record, including the post-trial inquiry and the affidavit of defense counsel, the Court of Military Review made certain findings of fact. In keeping with the principle that this Court is bound by purely factual determinations of the Court of Military Review " *unless such*

---

[1] "I, Alan K. Wilson, LT. JAGC, USNR, being first duly sworn, do depose and say as follows:

"I was the detailed military defense counsel in the case of United States v AE2 William Carlos TROGLIN, the retrial of which was held on 11 June 1970. During the few weeks immediately preceding the trial, I conducted negotiations with Judge Advocates on the staff of the Commandant of the Eleventh Naval District concerning the possibility of obtaining a pretrial agreement. I mentioned that the defense was considering raising three prepleading motions: (1) a motion to dismiss all charges for lack of speedy trial; (2) a motion to dismiss one charge of writing a bad check under the O'Callahan decision; and (3) a motion to dismiss all charges except the desertion charge on the ground that the military judge had abused his discretion in declaring a mistrial in the first hearing and that a retrial

would thereby place the accused in double jeopardy. I reached a tentative pretrial agreement with the Assistant District Judge Advocate over the telephone, and he stated to me that 'you will raise no motions', or words to that effect. A few days later this agreement was disapproved. Still later I negotiated a new agreement over the telephone with the Assistant District Judge Advocate, and while talking I began to believe that under this new agreement no restrictions would be placed on the defense's prepleading motions. However, at the very end of the conversation, the Assistant District Judge Advocate stated, 'Of course, you won't raise your motions' or words to that effect. The agreement was later reduced to a written memorandum, which contained no mention of the restriction on the motions. In accordance with the restriction, however, the defense raised no motions prior to the pleadings."

184

*conclusions are arbitrary and capricious, so as to amount to an abuse of discretion'"* (United States v Phifer, 18 USCMA 508, 510, 40 CMR 220 (1969)), we believe it necessary to set forth their factual findings in detail:

"On 28 May 1970 a conference was held in the office of Commander Johns, Assistant Staff Judge Advocate, attended by Commander Johns, Lieutenant Wilson, Defense Counsel, and Lieutenant Ahlstrand, Trial Counsel. The matter under discussion was a proposal for pretrial agreement desired by the appellant. However Commander Johns was not predisposed to recommending a suspension of a punitive discharge and no agreement was reached. The matter of whether motions would be made by the defense prior to entering a plea of guilty was also discussed.

"Lieutenant Coffin, Legal Assistance Officer, whose office was across the hall from Commander Johns, determined that no agreement had been reached and suggested to both counsel that they return the following week and negotiate directly with Captain Schmidt, Staff Judge Advocate because Commander Johns would then be on leave.

"On 1 June 1970 Lieutenants Wilson and Ahlstrand discussed the proposed pretrial agreement with Lieutenant Coffin, who had come to know the appellant through rendering him legal assistance. Lieutenant Coffin agreed to recommend to Captain Schmidt approval of the proposed pretrial agreement provided Lieutenant Wilson agreed not to make a motion to dismiss because of former jeopardy. Lieutenant Coffin proposed that the agreement not to make the motion be included in the pretrial agreement.

"Lieutenant Ewing, Head of the Court-Martial Review Section, then acting as Assistant Staff Judge Advocate, advised Lieutenants Coffin and Wilson that such agreement not to raise motions could not be made part of the pretrial agreement. He told Lieutenant Coffin in the presence of Lieutenant Wilson that the defense 'certainly can raise these motions, and there is nothing we can do about it, other than possibly a gentlemen's agreement that they wouldn't.'

"On 3 June 1970 the proposed pretrial agreement was reduced to writing and signed by the appellant and Lieutenant Wilson.

"On 4 June 1970, Lieutenant Wilson signed a one-page memorandum to the convening authority regarding the proposed pretrial agreement. Neither the proposed agreement, or said memorandum, mentioned defense motions.

"On 5 June 1970, Lieutenant Ahlstrand signed an endorsement to Lieutenant Wilson's memorandum and recommended approval of the proposed pretrial agreement. He advised the convening authority that if the case were tried on its merits, a motion of speedy trial and double jeopardy would probably be raised, and if the pretrial agreement were approved those motions would not be made.

"On a date not specified, apparently 5 June 1970 or afterwards, Lieutenants Ewing and Coffin conferred with Captain Schmidt and finally convinced him to recommend approval of the proposed pretrial agreement which included provisions for suspension of a punitive discharge. Thereafter the convening authority approved the pretrial agreement. Neither Captain Schmidt nor the convening authority were aware of the 'gentlemen's agreement' between Lie[u]tenants Coffin and Wilson regarding making motions, prior to entering a plea of guilty."

We have some difficulty in agreeing with the conclusion of the Court of Military Review that "[n]either Captain Schmidt nor the convening authority were aware of the 'gentlemen's agreement' between Lie[u]tenants Coffin and Wilson regarding making motions, prior to entering a plea of guilty."

**185**

While it may not appear that they were so informed in any precise words, the implication that an agreement had been reached is clear from the language of the memorandum of trial counsel to the convening authority informing him that the terms of the proposed pretrial agreement had been discussed with defense counsel. In recommending that it be accepted, trial counsel wrote:

"3. If this case were to be tried on its merits, the motions of speedy-trial and double jeopardy would probably be raised. I believe that the issue of double jeopardy might be a rather close issue. If the pretrial agreement is approved, *these motions will not be made.*" [Emphasis supplied.]

At the post-trial inquiry into the circumstances surrounding the making of the agreement, trial counsel (Lieutenant Ahlstrand) acknowledged that he had prepared his memorandum for the information of Captain Schmidt, the staff judge advocate, so that the latter would have something on which to base his own recommendation to the convening authority. Furthermore, trial counsel informed Lieutenant Commander Canant, the officer conducting the inquiry, that while he did not specifically recall why he included the statement in the memorandum, he stated:

". . . [I]t was my understanding that if there would be a pretrial agreement that the motions would not be made, and that was one of the reasons I recommended approval of the pretrial agreement. I felt that because of those issues involved that there was a chance that the Government could lose the entire case, and I felt that *these issues were relevant to the command's decision as to whether or not they wished to approve the pretrial agreement.*

"LCDR CANANT: Now, had you been told by defense counsel that if the pretrial agreement were concluded the motions would not be raised; or, what I am trying to get

at is: How did you come by this information that they would not be raised?

"LT AHLSTRAND: I don't recall the exact extent of our conversation. I have a feeling that there was an agreement somewhere that the motions would not be made, or possibly I should not say 'an agreement,' but that there was an understanding that if the agreement was approved that these particular motions would not be made." [Emphasis supplied.]

The fact that such an agreement existed was disclosed by Lieutenant Coffin, who, in explaining his part in the activities preceding the presentation of the pretrial agreement to the staff judgment advocate and the convening authority, testified:

". . . I told Lieutenant Wilson, however, that my recommendation to Captain Schmidt, for whatever it would be worth, was conditioned upon one thing, and one thing only, and that was that *I had an agreement from Lieutenant Wilson that he would not raise the former jeopardy motion that he had told me previously that he was intending to raise. My reason for making this request was that I was here at the Law Center during that first trial and I was a very good friend, and still am, of the attorney who was handling the case. I saw no reason, because of this rather generous pretrial agreement, that such a motion should be raised, since it was a somewhat source of embarrassment for the attorney in the initial case.*

"Lieutenant Ewing withdrew from the hearing room at this time.

"LT COFFIN: So, accordingly, I requested of Lieutenant Wilson that he make this concession, that he not raise the former jeopardy motion, because this would mean, in effect, that the first trial would be rehashed by the Military Judge in this subsequent trial. So, I requested of Lieutenant Wilson this understanding. He concurred, and indicated that he

was willing to waive this particular motion. . . .

. . . . .

"LT COFFIN: *My agreement, Mr. Canant, was simply that I would not make a personal recommendation to Captain Schmidt concerning Petty Officer Troglin unless he gave me his word that he would not raise this former jeopardy motion.*" [Emphasis supplied.]

The views of the staff judge advocate and the convening authority on this matter are not before us—apparently they were not questioned during the post-trial inquiry.

In United States v Cummings, 17 USCMA 376, 38 CMR 174 (1968), we held that the inclusion in the pretrial agreement of a waiver by the accused of his right to raise the issues of lack of speedy trial or denial of due process was contrary to public policy and void. As we said in *Cummings,* at pages 378 and 379:

"The incorporation of this waiver as a condition of the guilty plea agreement is misleading to an accused and repugnant to the purposes of the agreement. In the first place, we have expressly pointed out a guilty plea neither waives the right to speedy trial nor the right to due process in the handling of charges. United States v Davis, 11 USCMA 410, 29 CMR 226 [1960]; United States v Schalck, 14 USCMA 371, 34 CMR 151 [1964]; United States v Tibbs, 15 USCMA 350, 35 CMR 322 [1965]. Hence, it is improper in a plea agreement to lead the accused to believe his judicial confession of guilt will require him to forgo reliance upon his statutory and constitutional right to have the charges against him disposed of as rapidly as circumstances pertinent to the case may permit. See Code, supra, Articles 10, 33, 10 USC §§ 810, 833.

. . . . .

". . . Plea arrangements are not designed, . . . to 'transform the trial into an empty ritual,' United States v Allen, 8 USCMA 504,

507, 25 CMR 8 [1957]. They should concern themselves with nothing more than bargaining on the charges and sentence, not with ancillary conditions regarding waiver of fundamental rights."

See also United States v Ponds, 1 USCMA 385, 3 CMR 119 (1952); United States v Darring, 9 USCMA 651, 26 CMR 431 (1958); United States v Scoles, 14 USCMA 14, 33 CMR 226 (1963); United States v Callahan, 22 CMR 443 (ABR 1956); United States v Banner, 22 CMR 510 (ABR 1956), all cited in *Cummings* as supporting authority.

Just as the issue of lack of speedy trial is a question best "resolved at a level where testimony can be taken, witnesses examined, and testimony offerred in rebuttal" (United States v Schalck, 14 USCMA 371, 374, 34 CMR 151 (1964)), so, too, is the question of former jeopardy. Article 44, Code, supra, 10 USC § 844 paragraphs 67*a* and 215*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). Of greater importance to this case, however, is the fact that, unlike the issue of lack of speedy trial which is not waived even by virtue of a guilty plea, the defense of former jeopardy may be waived. In United States v Schilling, 7 USCMA 482, 483, 22 CMR 272 (1957), this Court stated:

"As a general rule, a claim of former jeopardy must be raised before the conclusion of the trial or it is waived. Manual for Courts-Martial, United States, 1951, paragraph 67*a*. Inasmuch as there are no *unusual circumstances* present, the failure to object to the second trial is itself sufficient to preclude the accused from raising the issue for the first time on appeal before this Court. United States v Kreitzer, 2 USCMA 284, 8 CMR 84 [1953]." [Emphasis supplied.]

The presence of "unusual circumstances" alluded to in *Schilling* are patently obvious in this case—the *understanding* or *gentlemen's agreement* by defense counsel not to raise the

issue before the court in return for Lieutenant Coffin's recommendation to the staff judge advocate that the proffered pretrial agreement be accepted.

We have carefully searched this record of trial and are unable to find any indication that the accused knew of, was a party to, or was informed of any promise not to bring into question the claim of former jeopardy. In the instant case in the absence of evidence tending to show that the accused knowingly and intelligently waived the opportunity to claim former jeopardy, his negative response, when asked by the military judge whether he was aware of any legal defenses which could be presented, served to "transform [this aspect of] the trial into an empty ritual." United States v Allen, 8 USCMA 504, 507, 25 CMR 8 (1957). Cf. United States v Care, 18 USCMA 535, 40 CMR 247 (1969).

We hold that the facts of this case are sufficiently similar to those presented in *Cummings* to justify the same result. The understanding between counsel not to raise the question of former jeopardy obviously was contrary to public policy and all the more insidious since, being unrecorded, it was ostensibly hidden from the light of judicial scrutiny. Trial counsel's endorsement to the pretrial agreement informing the staff judge advocate and the convening authority that "motions of speedy-trial and double jeopardy" would not be raised if the agreement is approved, should have alerted them to conduct further inquiry, especially in light of trial counsel's further comment therein, "I believe that the issue of double jeopardy might be a rather close issue." Under these circumstances the staff judge advocate, as an officer of the court, "should insure, or at least assist in providing, a full litigation of the matter at trial level." United States v Banner, supra, at page 520.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting):

The accused was honorably separated from the service in September 1970. In my opinion, the criminal proceedings have, therefore, abated. See my dissent in United States v Entner, 15 USCMA 564, 36 CMR 62 (1965). I would dismiss the charges.