UNITED STATES, Appellee

v

THOMAS J. LALLANDE, Engineman Third Class,
U. S. Navy, Appellant

22 USCMA 170, 46 CMR 170

No. 25,939

March 9, 1973

*Captain D. F. Hagans, II*, USMCR, argued the cause for Appellant, Accused. With him on the brief were *Lieutenant David C. Sellergren*, JAGC, USNR, and *Lieutenant Guy W. Mitchell, III*, JAGC, USNR.

*Lieutenant James R. Lamb*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel G. L. Bailey*, USMC, and *Captain Donald B. Myers*, USMCR.

## Opinion of the Court

QUINN, Judge:

As part of an offer to plead guilty to two charges of wrongful possession of prohibited substances in violation of Navy regulations, the accused indicated that he would accept a stated sentence, "subject" to specified "terms and conditions of probation." The convening authority accepted the offer. In due course, the accused was tried and convicted as charged. On review, the period of confinement and forfeitures adjudged by the court-martial was reduced to conform to that provided in the pretrial agreement. The convening authority also suspended execution of various parts of the sentence, with provision for automatic remission, if the accused "complied with" listed "terms and conditions," which, with inconsequential changes in phraseology, were those set out in the pre-

trial agreement. The accused now contends that a convening authority has no power to prescribe conditions of probation, and if he does, three of the five conditions attached to his probation "contradict public policy."

Article 71(d), Uniform Code of Military Justice, 10 USC § 871, authorizes a convening authority to "suspend the execution of any sentence, except a death sentence." Although the accused acknowledges that suspension of execution of his sentence placed him on probation for the period of suspension, United States v May, 10 USCMA 358, 27 CMR 432 (1959), he denies that the convening authority's power to create the probationary status carries with it authority to prescribe conditions which, if they occur, will justify termination of the probation and execution of that part of the sentence that is still outstanding. The accused admits that when imposing sentence a federal criminal court has power to grant probation "upon such terms and conditions as the court deems best," 18 USC § 3651; he also admits that a convening authority has substantial judicial responsibility in the court-martial system which corresponds to that of a federal judge, including determination of whether the accused merits probation; and he concedes that the military procedure for revocation of probation, Article 72, UCMJ, 10 USC § 872, was "conceived" to "approximate" that of the "civilian system." Despite these concessions, he insists that there is such a "substantial difference" between prescribing terms and conditions of probation and "simply conducting a probation revocation hearing" as to justify denying to the convening authority the power of the civilian judge to impose conditions of probation.

▆▆▆▆ Only two provisions of the Uniform Code relate to probation Article 71 empowers the convening authority to grant probation. The broad language of the grant is certainly consistent with authority to impose conditions upon which probation could be terminated. In fact, it is so construed by Judge Latimer in his opinion in

United States v May, supra at 369–370, 27 CMR at 443–444. Article 72 mandates that before vacation of probation a hearing must be held "on the alleged violation of probation." The article in no way implies that the "alleged violation" cannot consist of violation of any condition specified in the grant of probation, but must be limited, as the accused contends, to criminal conduct during probation. As to the Manual, the only restriction it imposes on the grant of probation is that the "period of suspension should not be unreasonably long." Manual for Courts-Martial, United States, 1969 (Rev ed), paragraph 88e(1); this particularization suggests that no other limitation is intended. Compare United States v Cox, 22 USCMA 69, 46 CMR 69 (1972). The text of the Uniform Code and that of the Manual, therefore, fairly imply that conditions are proper. The implication is significantly strengthened by the discussion of the subject at the hearings on the Uniform Code, in which the intended courts-martial practice was likened to "the same fashion as in civilian courts." See United States v May, supra at 362, 27 CMR at 436. We have observed that to the extent a particular practice in the federal civilian courts is not in conflict, or inconsistent, with the Uniform Code or the Manual for Courts-Martial, it can appropriately be followed in court-martial proceedings. United States v Fisher, 4 USCMA 152, 15 CMR 152 (1954). We conclude, therefore, that some conditions can properly be attached to a grant of probation by the convening authority.

Appellate defense concede that criminal conduct by a probationer justifies revocation of the probation; and Government counsel concede that the convening authority does not have "unbridled discretion" as to the kind of conditions he may impose. For purposes of this appeal, we need note only our conviction that the language of the Code and the Manual and the congressional hearings on the Code support the conclusion that, incident to the power to grant probation, the con-

vening authority has power to impose at least the same conditions allowable to a judge in a federal civilian criminal court.

■ The conditions in this case were proffered by the accused in his offer to plead guilty, with an accompanying memorandum acknowledging his understanding of their meaning and effect. They are the exclusive product of his own, voluntary effort, not a response to a demand by the Government that they be accepted "or else." Nor does it appear that the accused obtained the conditions only at the price of surrendering a constitutional right that could affect his guilt or the legality of his sentence. Compare United States v Cummings, 17 USCMA 376, 38 CMR 174 (1968) and United States v Troglin, 21 USCMA 183, 44 CMR 237 (1972). The accused's consent to the conditions, therefore, is factual, not fictional. Arguably, the accused ought not be allowed now to retain the advantages of the pretrial offer but cast off its restraints. We pass decision on this point, however, to reach the merits of his contention that the conditions in issue "contradict public policy." As included in the action of the convening authority, the conditions are as follows:

[T]hat the probationer

  •    •    •    •    •

3. conducts himself in all respects as a reputable and law-abiding citizen;

4. does not associate with any known users of, or traffickers in, dangerous drugs or narcotics, or marijuana; and

5. submits his person, vehicle, place of berthing, locker and/or other assigned personal storage areas aboard a Naval vessel or command, to search and seizure at any time of the day or night, with or without a search warrant or appropriate command authorization, whenever requested to do so by his Commanding Officer or authorized representative.

■ The literature on the rights of probationers and parolees is voluminous and in disagreement, as to both approach and principle. It suffices that we note our agreement with the view that a probationer does not *ipso facto* forfeit all protections of the Constitution. We note also that probationers, like parolees, remain subject to lawful punishment and owe their freedom from exaction of the punishment to governmental grace. That circumstance necessarily puts them in a different position from other persons in the community. The right of free association with others, for example, is recognized as a constitutional right. N.A.A.C.P. v Alabama, 377 US 288, 307–308, 12 L Ed 2d 325, 84 S Ct 1302 (1964). However, a probationer can be held accountable to the Government as to the company he keeps. Arciniega v Freeman, 404 US 4, 30 L Ed 2d 126, 92 S Ct 22 (1971). See also Willis v United States, 250 A2d 569 (DC Mun App 1969). For that reason, condition 4, mentioned above, impresses us as being reasonable and appropriate for a probationer who has been convicted of wrongful possession of prohibited substances. As to condition 3, the injunction that the accused conduct himself as a reputable and law-abiding person may lack the definiteness required for conviction of crime, but disreputable conduct not amounting to crime can be indicative of rejection of responsibilities of productive citizenship. Among the standard conditions of parole in the civilian criminal justice system are conditions to the effect that the parolee will "support [his] legal dependents, if any, to the best of [his] ability" and that he will "not drink alcoholic beverages to excess." United States *ex rel.* Sperling v Fitzpatrick, 426 F2d 1161, 1166–67 n 1 (2d Cir 1970) (Kaufman, J., concurring). Since probation, like parole, is "far more apt to be successful when limitations on . . . freedom are delineated with some degree of certainty," *id.* at 1168, it, assuredly, might have been better if the convening authority had amplified the condition with more specific details as to

what would constitute disreputable conduct, instead of accepting it as submitted by the accused. Even in its present form the condition is not so overbroad as to be unconscionable. Enforcement of the condition cannot be predicated upon "whim or caprice." Burns v United States, 287 US 216, 223, 77 L Ed 266, 53 S Ct 154 (1932); Arciniega v Freeman, supra.

■ Condition 5 which provides for search of the accused's person and private effects when "requested" by his commanding officer, was perceived by Judge J. Fielding Jones, writing in dissent below, as an obnoxious transformation of the accused's "realm of privacy . . . [into] a free preserve for every functionary who cares to invade it." We share Judge Jones' concern that a condition of this kind can be misused by a commanding officer more desirous of pushing the accused into jail than in aiding his rehabilitation. However, the potential for abuse in the exercise of power is not so inimical to possession of the power as to require that the power itself be denied. It seems to us that, where, as here, the possession of power, if not essential, is at least sound and appropriate, the potential for misuse requires not divestment of the power but careful scrutiny of its exercise. Inquiry into whether the power has been properly exercised is appropriately reserved for the time of its exercise. Arciniega v Freeman, supra; United States ex rel. Sperling v Fitzpatrick, supra at 1166 and 1168 (Lumbard, C. J., concurring, and Kaufman, J., concurring, respectively); United Statse ex rel. Randazzo v Follette, 282 F Supp 10, 13 (SDNY 1968).

It has been suggested that whether or not a probationer "consents" to a condition of probation providing for search of his person and property without a warrant on probable cause, he is subject to such inspection as an incident to his status. See Judge Kaufman's concurring opinion in United States ex rel. Sperling v Fitzpatrick, supra at 1167 n 2. If the observation is a correct construction of the scope of the constitutional protection as applied to a probationer, then the condition before us deprives the accused of no right, and does not "contradict public policy" as he contends. Assuming, without deciding, that this construction describes too narrowly the right of a probationer, the condition in this case does not impress us as being so alien to the purposes of probation as to require its rejection as a permissible means of determining whether the probationer is on the road to rehabilitation or recidivism.

Recidivism in drug cases is sufficiently common as to make it reasonable to anticipate the likelihood of a relapse. Inspection on the basis of facts not amounting to probable cause to believe that the probationer has prohibited drugs in his possession would, therefore, be reasonable. From this standpoint, the situation of the probationer is substantially like that of a dealer subject to gun control regulation. The United States Supreme Court has held that in that kind of expansive inspection situation there is no violation of "justifiable expectations of privacy" by conducting an inspection without a warrant and in the absence of exigent circumstances. United States v Biswell, 406 US 311, 316, 32 L Ed 2d 87, 92 S Ct 1593 (1972). We are impressed by the fact that the occasion for inspection is not left to the suspicion or whim of an enforcement officer, but to the considered judgment of the accused's own commanding officer, who is, in law and tradition, responsible for, and concerned with, the accused's well-being and progress in the command. On balance, we are satisfied that this condition of probation is not so unreasonable in relation to the overall goals of probation, and the regulatory needs of insuring compliance with its purposes, as to justify its invalidation, especially since the accused and his counsel proposed and consented to it.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

DUNCAN, Judge (concurring in part and dissenting in part):

"Federal judicial power to permit probation springs solely from legislative action." Affronti v United States, 350 US 79, 83, 100 L Ed 62, 66, 76 S Ct 171 (1955). See *Ex parte* United States, 242 US 27, 61 L Ed 129, 37 S Ct 72 (1916). 18 USC § 3651 provides in part that "[u]pon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States . . . may suspend the imposition or execution of sentence and place the defendant on probation . . . upon such terms and conditions as the court deems best."

Only two provisions of the Uniform Code of Military Justice relate to probation. Article 71(d), UCMJ, 10 USC § 871, empowers the convening authority to "suspend the execution of any sentence, except a death sentence." Article 72(a), UCMJ, 10 USC § 872, mandates that "[b]efore the vacation of the suspension of a . . . sentence" a hearing must be held "on the alleged violation of probation."

If the convening authority has the power to impose specific conditions relative to the probationer's conduct during the period of probation, that power must be contained in the cited codal provisions or in the Manual for Courts-Martial, United States, 1969 (Revised edition), Article 36, UCMJ, 10 USC § 836, which has the force of law. See United States v Smith, 13 USCMA 105, 32 CMR 105 (1962). Paragraph 88e(1), Manual, supra, provides in part:

The purpose of suspending the execution of a sentence is to grant the accused a probationary period within which he may *by refraining from further misconduct* earn the remission of his sentence. (Emphasis supplied.)

Paragraph 97b, Manual, supra, states that "[a]n *act of misconduct,* in order to serve as a basis for vacation of suspension of a sentence, must occur within the period of suspension" (emphasis supplied).

From the hearings on the Code, it is clear that Article 72, UCMJ, was enacted to eradicate a defect in the area of suspended sentences—the unencumbered power to vacate suspensions for any or no reason. United States v May, 10 USCMA 358, 27 CMR 432 (1959); United States v Cecil, 10 USCMA 371, 27 CMR 445 (1959). The safeguards of the article were constructed to provide each probationer with a status that could only be terminated after a full hearing. The following quotation from the Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong, 1st Sess 1208–9 (1949), discloses the intent of Congress with regard to Article 72:

MR. BROOKS. Mr. Smart, where is that word "probationer" used there?

MR. SMART. That is a new word, so far as military law is concerned, Mr. Chairman. Mr. Larkin can give you some information on that point.

MR. LARKIN. It is used because I think it most clearly describes the position of the person contemplated in this article. This article, I might say, Mr. Chairman, is substantially new and it is designed to set up the following procedure.

There are a number of instances where after the accused has been sentenced and confined he is sent to a retaining command or a retraining center and subsequently is restored to duty. . . .

Frequently an accused who is returned to active duty has not completed his sentence by a considerable portion and he is returned to duty *in effect on probation.* The unexecuted part of the sentence may still hang over him but *pending his good behavior,* upon his return to duty, over a certain period of what is *most accurately called probation,* he may be able to work his way out of, or to have the unexecuted portion of his sentence and even the dishonorable discharge or the bad conduct discharge set aside, and ultimately get an honorable discharge.

**22 USCMA 175**

Now, when he is back on duty *on probation,* there are a number of instances where such persons *commit additional offenses or in some way by their conduct violate the standard of good behavior.* In the same fashion as in civilian courts, upon such violations, they may be returned to serve out the unexpired portion of their sentence or the dishonorable discharge or bad conduct discharge which has been suspended may be revoked.

*To assure that when a man who has been returned to duty and is charged with violation of this state of probation, that the suspended sentence that he has received or the suspension of the balance of the execution is not capriciously revoked or arbitrarily revoked, and that the dishonorable discharge will not be capriciously executed and have him discharged from the Service, we have provided this type of hearing so that the elements of the offense or the facts of the conduct which is charged amounts to a violation on his part, are clearly set forth.*

We have provided this procedure which, as I say, is substantially new. It is a protection for the accused.

It is perfectly true that there are any number of instances where a man who is given this other chance just does not make good at all and in a large number of those cases he should have a vacation of the suspension; that is, a vacation of the suspension is entirely appropriate and he should be sent back to serve out the unexecuted portion of his sentence, or it is perfectly appropriate that the dishonorable discharge be executed. All that this provides is that it will be done after this protective procedure. (Emphasis supplied.)

My brothers are of the conviction that the language of the Code, the Manual, and the congressional hearings on the Code, support the conclusion that "incident to the power to grant probation, the convening authority has power to impose at least the same conditions allowable to a judge in the federal civilian criminal court."

I disagree. There is no *specific* legislative enactment empowering the convening authority to set conditions for probation. Unlike federal district judges, convening authorities have not been specifically granted the power by Congress to set *terms and conditions of probation as they deem best.* Cf. 18 USC § 3651. See Affronti v United States, supra; Fed R Crim P 32. Assuming that the power to suspend necessarily carries with it the right to impose *some* conditions, and the hearings on the Code indicate that it does, it is clear that in the military these conditions are limited to acts of "misconduct" which "violate the standard of good behavior." In the Manual for Courts-Martial, United States, 1951, issued in conjunction with the enactment of the Code, paragraph 88*e*(1) stated that "[o]rdinarily, the purpose of suspending the execution of a sentence is to grant the accused a probationary period within which he may show by his conduct that he is entitled to have the suspended portion of the sentence remitted." This portion of the Manual was

reworded [as noted above] to avoid the inference that the purpose of a suspended sentence is to permit an accused to show by affirmative acts of good conduct that a suspension should be remitted. Actually, *all that is required is that he not get in trouble which would justify vacation.* See, *e.g.,* United States v Cecil, 10 USCMA 371, 27 CMR 445 (1959); *United States v May,* 10 USCMA 258, 27 CMR 432 (1959).

Department of the Army Pamphlet No. 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition, at 17–6 (emphasis added).

Accordingly, I agree that condition 4 is reasonable and appropriate for a probationer who has been convicted of wrongful possession of prohibited substances. Cf. Arciniega v Freeman, 404 US 4, 30 L Ed 2d 126, 92 S Ct 22

(1971). While condition 3 lacks a desired definiteness, the fact that the subsequent misconduct alleged to be violative thereof must necessarily be revealed during the required hearing for revocation of probation, Article 72 (a), UCMJ, 10 USC § 872, where it can be reviewed for abuse, Arciniega v Freeman, supra, is, in my opinion, sufficient to render the condition an acceptable one.

My disagreement with the majority stems from their approval of condition 5. Contrary to conditions 3 and 4, which require affirmative *misconduct* or violations of standards of good behavior on the part of the probationer, condition 5 is violated simply by the refusal of the probationer to submit himself and his belongings to a requested search and seizure at any time during a 12-month period after release from confinement. The pretrial agreement signed by Lallande which contained the conditions for probation, provides in the paragraph following condition 5:

> Prior to executing this request, I have been counselled by qualified counsel, LT James P. BRADLEY, JAGC, USNR. *He has advised me of the terms of this requested probation and that in the event I violate any one of the aforementioned terms, my then commanding officer may recommend to the appropriate general court-martial authority superior in the chain of command that my suspension be vacated and the punitive discharge executed.*

My counsel has further explained to me, and I understand, my Constitutional rights against unreasonable search and seizure; I further understand that by the terms of this agreement I do not give up such rights for the period of probation, and may insist upon such rights, but that *if I do not permit a search and*

*seizure, or if I object to such a search, as described in paragraph 5, above, I am in violation of the terms of my probation.* (Emphasis supplied.)

As I read this portion of the agreement, it is self-executing. A successful argument could conceivably be made that by its terms the need for a hearing under Article 72(a), at least for a violation of condition 5, is abrogated. Whether this is so or not, all that would have to be demonstrated at such a hearing is that the probationer objected to a search and/or declined to permit it.

The Manual recommends that the convening authority suspend the whole of a sentence when it appears to him that his action "will promote discipline and aid in the rehabilitation of the accused." Paragraph 88e(1), Manual, 1969 (Rev ed), supra. I am unable to envision in what manner either of these most laudable purposes would be served by requiring, as a condition of probation, that an accused waive a basic constitutional right. In the words of Judge Jones of the Court of Military Review, writing in dissent in this case, the conditions "insofar as they approach an invasion of the Fourth and Fifth Amendment Rights . . . necessarily have a belittling and demeaning effect upon the individual."

A convening authority, although he has a function which is judicial in nature, is simply not a judge. Congress has purposefully created the separate position of military judge to perform the ordinary judicial functions at trial.[1] Only after sentence has been imposed can it be said that the statutory power of the convening authority and that of a federal judge coincide. Each may act to suspend the sentence.[2] Thereafter, their authority again diverges. While the federal

---

[1] Military judges have no power to suspend sentences, whether adjudged by them or by a court-martial with members.

[2] With regard to the convening authorities' power to disapprove or re-duce the sentence imposed by the court-martial, it should be noted that the federal district judge, who personally determines an appropriate sentence, may, in his discretion, impose no sentence or a minimal one.

judge retains the responsibility for conducting the inquiry into whether the suspension of sentence should be revoked, the comparable hearing in the military is conducted by the *special court-martial authority* then having jurisdiction over the accused. This is so even in general courts-martial cases. The final determination to revoke is made by the federal judge. The officer then exercising general court-martial jurisdiction over the accused makes this decision in the military, although the original decision to suspend may have been made by a special court-martial authority.

A comparison of the powers granted a convening authority under the provisions of the Code and the Manual, with those allowed a federal judge under the United States Code and the Federal Rules of Criminal Procedure, reveals that a convening authority has not been given the wise discretionary powers of the federal judge regarding probationers. The reference in the hearings on the Code to "the same fashion as in civilian courts," United States v May, supra, obviously referred to the procedure to be followed under the newly enacted Article 72 for "Vacation of suspension" of sentence. There is substantial difference between a statutory enactment providing for a probation revocation hearing regarding *additional offenses, misconduct,* or *conduct violative of the standards of good behavior,* and a statute granting a federal judge authority to place a man on probation *on such terms and conditions as the court deems best.*

We deal in this case with probation and not parole. Although each is a matter of legislative grace, they are governed by separate statutes. In the military the Secretary of the respective services has been granted authority to provide a system of parole.[3] SECNAVINST 1640.8, dated November 13, 1970, issued in compliance with

Article 152, sets forth the conditions for such parole. Certificate of Parole, Figure 2–1. Insofar as the Navy is concerned, one on parole is not required to relinquish his Fourth Amendment rights. While one may affirmatively waive his rights under the Fourth Amendment, Zap v United States, 328 US 624, 90 L Ed 1477, 66 S Ct 1277 (1946); United States v Biswell, 406 US 311, 32 L Ed 2d 87, 92 S Ct 1593 (1972), this right is not automatically denied one convicted in federal district court simply because of his later status as a parolee. United States *ex rel.* Sperling v Fitzpatrick, 426 F2d 1161 (2d Cir 1970). And, as stated in United States *ex rel.* Randazzo v Follette, 282 F Supp 10, 13 (DCNY 1968):

> If there be any difference between one on probation and one on parole, so far as standing to invoke constitutional rights is concerned, the difference should favor the one on probation.

The purported waiver, if there is one in this case, is contained in the pretrial agreement. Therein the appellant acknowledged that "by the terms of this agreement I do not give up . . . my Constitutional rights against unreasonable search and seizure for the period of probation." It would be his assertion of that right which would place him "in violation of the terms of [his] probation." This may well be a distinction without a difference. Be that as it may, my reading of the record does not cause me to believe that the terms and conditions of this agreement originated with the appellant. As this Court unanimously declared in United States v Cox, 22 USCMA 69, 71, 46 CMR 69, 71 (1972):

> In the pretrial negotiations, the convening authority occupies a strong bargaining position. Frequently the convening authority's

---

[3] 10 USC § 952 provides:
The Secretary concerned may provide a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the authority of that Secretary.
Cf. 18 USC §§ 4201–4210.

motive for consummation of the deal is a grant of clemency. However, the convening authority, as a bargainer, also benefits from such an agreement by his command not having to conduct a contested court-martial. The bargaining street is two-way, not one-way. We cannot find merit in appellate Government counsel's theory that the convening authority's pretrial agreement participation is only a matter of clemency and the bargain is only the incidental mechanism which carries clemency.

In United States v Cummings, 17 USCMA 376, 379, 38 CMR 174, 177 (1968), a majority of this Court held that plea arrangements "should concern themselves with nothing more than bargaining on charges and sentence, not with ancillary conditions regarding waiver of fundamental rights." Insofar as that holding relates to rights pertinent to the trial of the case then under consideration, as was the situation in *Cummings*,[4] I agree with it. See also United States v Troglin, 21 USCMA 188, 44 CMR 237 (1972).[5] In those instances, such as here, wherein the convening authority has also agreed to suspend execution of the sentence, in effect placing an accused on probation, I believe that *some* conditions can properly be attached to the pretrial agreement. These condition, however, must fall within the scope of the authority granted by law. It is a matter for legislative enactment and not judicial assumption.

I would hold that condition 5 is illegal and unenforceable.

---

[4] *Cummings* specifically agreed not to raise any issue of lack of speedy trial or of denial of due process.

[5] Troglin's attorney, unknown to him, had an unwritten understanding or gentlemen's agreement not to raise an issue of former jeopardy.