UNITED STATES

v.

Daniel R. MELANCON, 469 78 6673,
Private First Class (E-2), U. S.
Marine Corps.

NMCM 80 2533.

U. S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 17 April 1980.

Decided 27 May 1981.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and BOHLEN, JJ.

SANDERS, Judge:

Tried by military judge alone at a special court-martial, appellant was convicted upon his guilty pleas of stealing 189 government blankets, being disrespectful toward his superior commissioned officer, willfully disobeying the same commissioned officer and wrongfully possessing six to eight grams of marijuana, in violation of Articles 121, 89, 90 and 92, 10 U.S.C.A. §§ 889, 890, 892, 921, Uniform Code of Military Justice (UCMJ). Pursuant to a pretrial agreement the sentence to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $150.00 pay per month for 3 months and reduction to pay grade E–1 was reduced by the convening authority to a bad-conduct discharge. The supervisory authority approved the action of the convening authority.

Appellant has advanced five assignments of error, only one of which has merit.

I

THE APPELLANT'S PLEAS WERE IMPROVIDENT IN LIGHT OF THE APPARENT "GENTLEMEN'S AGREEMENT" BETWEEN THE GOVERNMENT, THE MILITARY JUDGE, AND TRIAL DEFENSE COUNSEL THAT THE GOVERNMENT WOULD NOT OFFER PROOF ON THE MERITS OF SOME OFFENSES IN EXCHANGE FOR A PLEA OF GUILTY TO OTHER OFFENSES.

Prior to trial appellant and the convening authority entered into a written pretrial agreement providing that appellant would plead guilty to the four offenses heretofore mentioned and not guilty to seven other specifications. The agreement, however, did not specifically indicate what course the government would follow in respect to these latter allegations.

After a lengthy discussion with appellant of the meaning and effect of the provisions of the agreement the military judge asked both trial and defense counsel if the agreement contained all of the understandings known to exist between appellant and the convening authority. Having been assured that it did, the military judge accepted appellant's pleas, entered findings of guilty, invited corrections or additions to page 1 of the Charge Sheet, and called for the prosecution's case in aggravation. Neither then nor subsequently did either counsel suggest that the remaining seven specifications be disposed of nor did the military judge dispose of them *sua sponte*. They simply were disregarded by all concerned.

Appellant now contends that this failure to dispose at trial of the specifications to which he pleaded not guilty is evidence of a secret agreement, contrary to public policy and understood by the trial counsel, defense counsel and the military judge but not by him, that the government would not go forward with these specifications. We do not agree.

When the military judge asked counsel if the written agreement contained all the understandings between the parties and received an affirmative reply, he had a right to rely on their response, *United States v. Myles*, 7 M.J. 132 (C.M.A.1979), and proceeded on with the trial based on a logical belief as to the natural consequences of the written agreement. Usually, though concededly not always, when an accused agrees to plead guilty to only some of the Charges and specifications pending against him in exchange for a guaranteed sentence, as a further consideration the government agrees not to proceed with the remaining Charges and specifications. The military judge obviously assumed this was the case

here and his assumption was proved correct by the events. While it would have been better had the pretrial agreement specifically spelled out the action to be taken on the specifications to which appellant pleaded not guilty and had the military judge or trial counsel, as appropriate, acted accordingly on the record, this failure of the government to further prosecute appellant, a course of action obviously to his advantage, is not a reflection of the type of *sub rosa* agreement condemned as violative of public policy. *United States v. Elmore*, 1 M.J. 262 (C.M.A.1976); *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972).

## II

THE APPELLANT'S PLEAS, PURSUANT TO A PRETRIAL AGREEMENT, WERE IMPROVIDENT IN THAT THE MILITARY JUDGE FAILED TO ADEQUATELY EXPLAIN THE MEANING AND EFFECT OF THE POST–TRIAL "MISCONDUCT CLAUSE" IN THE PRETRIAL AGREEMENT.

█ Any inadequacy in the military judge's explanation of the post-trial misconduct clause is rendered moot by the failure of the convening authority to invoke the clause. It is a nullity and may be ignored when evaluating the propriety and legality of the agreement. *United States v. Dawson*, 10 M.J. 142 (C.M.A.1981); *United States v. Rex*, No. 80 1757 (NCMR 5 February 1981).

## III and IV

THE APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 1 OF ADDITIONAL CHARGE I WAS IMPROVIDENT.

THE APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 2 OF ADDITIONAL CHARGE II WAS IMPROVIDENT.

Specification 1 under Additional Charge I alleges that appellant was disrespectful in language toward First Lieutenant S and specification 1 [1] under Additional Charge II alleges that he willfully disobeyed the lawful order of the lieutenant.

The facts elicited from appellant by the military judge prior to the acceptance of appellant's pleas, *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969), indicate that on the morning of 29 February 1980 appellant and First Lieutenant S, who was "not [appellant's] most favoristist [sic] person in the world", went to appellant's room where the lieutenant intended to search appellant's wall locker. During the course of the search a third Marine present in the room began laughing. This angered appellant who "started running [his] mouth to the lieutenant" [sic]. The lieutenant, whereupon, pointed his finger at appellant, who was standing "right up next" to his locker, and told appellant to stand on the other side of the room. Appellant, "on the verge of getting angry", responded, "[D]on't point your finger at me or tell me what to do".

Shortly thereafter appellant was sitting on the floor of his room when First Lieutenant S told him "to get off the floor and sit in the chair". Appellant got up willingly but had to be forcibly put in the chair. As he told the military judge, he would not have sat in the chair "of [his] own free will".

When the military judge asked appellant if he felt he was disrespectful to First Lieutenant S, appellant answered that he did not believe that he was. Appellant erroneously contends that the military judge should have rejected appellant's plea because of this disavowal of criminality.

█ If an accused after a plea of guilty sets up matter inconsistent with his plea, or if it appears that he has entered the plea improvidently or through a lack of understanding of its meaning and effect, the military judge should reject the guilty

1. Assignment of error IV inadvertently refers to specification 2 of Additional Charge II but it is apparent that appellant meant specification I.

plea and enter a not guilty plea in its stead. Article 45, 10 U.S.C.A. § 845, UCMJ. Before the plea is rendered improvident, however, there must be a substantial indication of direct conflict between the plea and accused's subsequent statement. *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973). Here the words spoken by appellant to the lieutenant were, in the context in which they were uttered, clearly disrespectful. Appellant's self-serving opinion that they were not does not render them any less so and, hence, does not impeach his plea.

■ Similarly, when the military judge asked appellant if he understood First Lieutenant S's instruction to sit in the chair to have been an order, appellant replied that he did not but rather considered that the lieutenant was "harassing" him. Again appellant avers that his plea was thereby rendered improvident and again we cannot concur.

The military judge continued:

MJ: Now you have indicated that you did not feel that that was an order. Understand now, Private First Class Melancon, that a providency plea is of a very unique character. It's not like a trial of the facts. It's as I indicated earlier. It's coming forward, a bearing of the soul as it were. In other words, when a person says, "Yeah, I have a deep and abiding conviction of my guilt, and, you know, these elements are true and accurate," and the rest of it, and of course part of this inquiry involving this particular article you look at the order itself, you know, was there an order given? Did the person understand it to be an order? Have you understood my comments?

ACCUSED: Yes, sir.

MJ: Now, I have understood earlier from your earlier responses that there was some personality difficulties at least between you and that lieutenant prior to that date from your earlier responses, and I look at your response at this point in time, where you said, "No, that wasn't an order," as perhaps reflecting your own dislike, as it were, with the lieutenant based upon what you have said so far factually as to what happened on that date and at that time the court can legally say well it would appear every bit to be an order. But I cannot—I'm not here to brow beat you or get you to submit that, you know, that you've got to say that that was an order. You have the right to have a trial of the facts, and that will happen if you understand my comments. If you are going to tell me, "No, that wasn't a lawful order," then this is not a provident plea.

ACCUSED: Yes it was a lawful order, sir.

MJ: Do you understand the court's comments?

ACCUSED: Yes, sir.

(R. 35).

When the military judge explained his dilemma to appellant, who, on sober reflection, withdrew his earlier statement, any question as to the propriety of the plea disappeared and the plea was properly accepted. Paragraph 70*b*, *Manual for Courts-Martial, 1969 (Rev.)*.

### V

THE COURT–MARTIAL ORDER ERRONEOUSLY STATES THAT SPECIFICATIONS 2 AND 3 OF THE CHARGE, SPECIFICATIONS 2 AND 3 OF ADDITIONAL CHARGE I, AND SPECIFICATIONS 1, 3, AND 4 OF ADDITIONAL CHARGE II WERE WITHDRAWN.

■ Appellant is correct in this assertion [2] since, more accurately, the specifications were ignored rather than withdrawn. We will cure this error by dismissing them.

Accordingly, specifications 2 and 3 under Additional Charge I, specifications 2 and 3 under Additional Charge II and specifications 1, 3, and 4 under Additional Charge III are dismissed. The findings of guilty of the Charges and remaining specifications

---

**2.** Except that he has misidentified the Charges.

and the sentence as approved on review below are affirmed.

Judge BOHLEN concurs.

CEDARBURG, Chief Judge (Absent).