**UNITED STATES**

v.

**Kevin L. KELLY, 564 04 0930, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 90 2484.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 March 1990.

Decided 13 Feb. 1991.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

CDR Ford R. Cole, JAGC, USNR–R, Appellate Defense Counsel.

LtCol J.S. Uberman, USMC, Appellate Government Counsel.

Before ALBERTSON, LANDEN and LAWRENCE, JJ.

LAWRENCE, Judge:

Pursuant to a pretrial agreement, appellant pled guilty at a special court-martial, military judge alone, to two specifications of unauthorized absence totalling approximately 17 days and two specifications of theft of two different motorcycles of a total value of about $10,000.00, in violation of Articles 86 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921, respectively. The military judge sentenced appellant to the jurisdictional maximum of the court-martial. The sentence was unaffected by the pretrial agreement and was approved in its entirety by the convening authority.

■ During the inquiry into the parties' understanding of the terms of what appears to be a standard-form pretrial agreement, the military judge established appellant's understanding that he entered his pleas of guilty "in exchange for the convening authority's promise to limit the amount of sentence that he will approved [sic] in your case to that which is set forth in the sentence limitation provisions found at Appellate Exhibit II to the agreement." Appellant indicated that he understood. The military judge then explained that "if the sentence adjudged by this court-martial was greater than the one found in your agreement, the convening authority would have to reduce the sentence to one no more severe than that found in your agreement." Again, appellant indicated that he understood. The parties then stated that the pretrial agreement was the entire agreement between appellant and the convening authority and that no other agreements or promises existed in the case. Later, when the military judge asked if both sides agreed with his interpretation of the agreement, both trial and defense counsel answered affirmatively. After announcement of sentence, the military judge examined Appellate Exhibit II, the "sentence limitation" portion of the agreement, and confirmed through appellant and both counsel that the agreement had no effect on the sentence.[1] No additional inquiry was made regarding the fact that appellant astutely negotiated a deal to plead guilty in consideration for which he obtained the assurance that the convening authority would not approve a sentence in excess of that which could lawfully be imposed.

The foregoing suggests a *sub rosa* agreement between the parties in which appellant agreed to plead guilty in return for the convening authority's agreement not to direct an Article 32, UCMJ, investigation that might well lead to trial of these offenses at a general court-martial. This suggestion results from the seriousness of the two larceny offenses and from the fact that there is no apparent tactical or legal reason to plead guilty pursuant to a pretrial agreement that contains no provision granting appellant a benefit.

In *United States v. Troglin*, 21 U.S.C. M.A. 183, 44 C.M.R. 237 (1972), the Court of Military Appeals condemned a *sub rosa*

---

1. R. at 46. Following each listed type of punishment are the words "as adjudged."

pretrial agreement provision "since, being unrecorded, it was ostensibly hidden from the light of judicial scrutiny." 44 C.M.R. at 242. To ensure such judicial scrutiny, the Court in *United States v. Green*, 1 M.J. 453 (C.M.A.1976), required trial judges to obtain from trial and defense counsel "their assurance that the written agreement encompasses all of the understandings of the parties and that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain." 1 M.J. at 456. The Court made clear its reasons for levying this requirement:

> Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understandings between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made. *See* Article 45(a), Uniform Code of Military Justice, 10 U.S.C. § 845(a). Finally, we believe trial judges must share the responsibility, which until now has been borne by the appellate tribunals, to police the terms of pretrial agreements to ensure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.

*Id.*

 This judicial mandate is contained in Rule for Courts–Martial (R.C.M.) 910(f), Manual for Courts–Martial, United States, 1984. After counsel inform the military judge of the existence of an agreement, the military judge "shall require disclosure of the entire agreement before the plea is accepted, provided that in trial before military judge alone the military judge ordinarily shall not examine any sentence limitation contained in the agreement until after the sentence of the court-martial has been announced." R.C.M. 910(f)(3). Since a pretrial agreement regarding forum generally indicates only that the convening authority may approve any sentence awarded, as would be the case were there no agreement at all, we perceive no compelling rationale for hiding the essence of the agreement from judicial scrutiny at this point in the trial even if it is before the military judge alone. After disclosure of the terms of the agreement, the military judge is required to ensure that the accused understands the agreement and that the parties agree to its terms. R.C.M. 910(f)(4). It is apparent, therefore, that pretrial agreements relating to trial forum should be drafted to inform the military judge *prior* to acceptance of the guilty plea of this aspect of the agreement even if the trial judge learns that the convening authority may approve the sentence adjudged without modification.[2]

The pretrial agreement at bar is drafted in terms of sentence, not forum, limitation. If there is a *sub rosa* agreement regarding trial forum in this case, the military judge, in fulfilling his duty under *Green* and R.C.M. 910, to establish the accused's understanding of the agreement, was induced to explain to appellant certain provisions that are irrelevant to his case, and, worse yet, was precluded from explaining other provisions that are clearly pertinent and should be understood by the accused if any agreement as to forum limitation exists. Pretrial agreement negotiations ordinarily take place between counsel. If an unwritten agreement existed as to forum, nothing in the record establishes appellant's awareness of the existence of the agreement much less his understanding of the procedural rights he would enjoy at an

---

**2.** We are aware that presently in the Naval Service pretrial agreements relating to trial forum differ from command to command in their written terms. Some are no more than modifications of standard-form agreements that in large part do not accurately detail the terms of the bargain. This type may be used due to slavish reliance on pre-printed forms or a conscious desire to mask the fact that the sentence imposed will be unaffected by the agreement. Neither reason justifies use of a document in court that does not accurately and completely set forth the terms of the plea bargain.

Article 32 investigation or the fact that the general court-martial convening authority in independently evaluating the evidence may decide that trial by general court-martial is unwarranted.

■■■ At trial, counsel for the government and the defense specifically disavowed the existence of any *sub rosa* agreement. We place great weight on such in-court statements in light of counsels' presumed integrity and clear legal, *see United States v. Hinton,* 10 M.J. 136 (C.M.A.1981); *United States v. Passini,* 10 M.J. 108 (C.M.A.1980); *United States v. Myles,* 7 M.J. 132 (C.M.A.1979); *United States v. Holman,* 28 M.J. 527 (A.C.M.R.1989), and ethical[3] obligations. Additionally, appellant stated unequivocally on the record that he understood the agreement in its entirety and that no other agreements or promises existed outside the written agreement. Absent evidence to the contrary, and in light of the lack of any averment of appellant's misunderstanding of any portion of the plea bargain, appellant is held to his in-court assertions. *United States v. Muller,* 21 M.J. 205 (C.M.A.1986). Of course, the fact of a *sub rosa* agreement alone will not void a pretrial agreement and negate the providence of a guilty plea. *See United States v. Corriere,* 24 M.J. 701 (A.C.M.R.1987) (and cases cited therein). In this case, any such agreement apparently would be to limit the trial forum to a special court-martial in return for guilty pleas, a bargain fully sanctioned by law. R.C.M. 705(b)(2)(A). In light of the maximum sentence that would exist at a general court-martial for the offenses to which appellant pled guilty, we perceive no prejudice to appellant even if a *sub rosa* agreement of the sort suggested existed. Based on the entire record, we find that appellant's guilty pleas were entered voluntarily and providently; accordingly, no additional inquiry is warranted. Trial judges must, however, be alert to facts that suggest *sub rosa* plea bargain agreements and inquire into those facts on the record.

**3.** Judge Advocate General Instruction 5803.1, 26 October 1987, RULES OF PROFESSIONAL CONDUCT Rule 3.3(a)(1) states in part that: "A judge advocate shall not knowingly ... make a

The findings and sentence as approved on review below are affirmed.

Senior Judge ALBERTSON and Judge LANDEN concur.

false statement of material fact or law to a tribunal." *See United States v. Myles,* 7 M.J. 132 (C.M.A.1979); MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3(a)(1) (1987).