UNITED STATES, Appellee,

v.

**Roger D. SCHMELTZ, Corporal, U.S. Marine Corps, Appellant.**

**No. 29,110.**

U. S. Court of Military Appeals.

April 11, 1975.

*Lieutenant Commander Jeffrey H. Bogart,* JAGC, USN, argued the cause for Appellant, Accused.

*First Lieutenant Ronald J. Waicukauski,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress,* USMC.

## OPINION OF THE COURT

FERGUSON, Senior Judge:

After pleading guilty to and being convicted of a number of drug offenses, the accused urges this Court to set aside the findings of guilty and direct a rehearing on the basis that certain provisions of his pretrial agreement were contrary to public policy. Our decision necessitates a review of the circumstances of the case.

Originally, the accused was charged with eight drug offenses. At an Article 39(a), UCMJ, 10 U.S.C. § 839(a) session held on November 27, 1973, he was duly arraigned and moved to suppress a pretrial statement in which he had confessed his guilt. After hearing evidence on both sides of the issue, the military judge denied the motion. Thereupon, the trial counsel, with the agreement of the defense, obtained a continuance until December 6, 1973, because of the absence of a material government witness.

On December 6, the court reconvened. Although he had previously indicated a desire to be tried by a court with members, the accused submitted a request to be tried by judge alone. After satisfying himself that the accused fully understood his options, the judge approved his request. Thereafter, the accused entered pleas of guilty to four of the eight specifications. The judge made full inquiry into the providence of these pleas, and the accused freely admitted his guilt. As a pretrial agreement was involved, the judge also questioned the accused fully as to its origin and the nature of its provisions:

MJ (to ACC): Did this agreement originate with you?

ACC: Yes, sir, it did.

MJ: Through discussions with your counsel?

ACC: Yes, sir.

MJ: Did your counsel try to force you into entering this?

ACC: No, sir, he did not.

MJ: Because at the last session you were going to plead not guilty, now you've changed your plea to guilty. He didn't twist your arm and say, "Hey, Schmeltz, I can get you a good deal if you change your plea"?

ACC: No, sir, he did not.

MJ: Has anyone representing the government, Captain Threlkeld or anybody in the Staff Judge Advocate's office, tried to twist your arm to force you to plead guilty?

ACC: No, sir.

MJ: I want to make it perfectly clear that two months later you don't come up by affidavit to higher authorities and say, "Look, my counsel and Captain Threlkeld got together and said, 'We'll get you a good deal if you will plead guilty'." They didn't do that did they?

ACC: No, sir.

MJ: Or did they? If they did, I want you to tell me.

ACC: No, sir, they did not.

MJ: Let the record reflect that the military judge is examining pages 1, 2, and 3 of Appellate Exhibit X, but he's not observing page 4.

MJ: Now, in paragraph 7 it says, "That this offer to plead guilty originated with me and my counsel; that no person or

persons whomsoever have made any attempt to force or coerce me into making this offer or pleading guilt;" do you understand that?

ACC: Yes, sir, I do.

MJ: And that's a true statement?

ACC: Yes, sir.

MJ: Because, once again, since you've entered a not guilty plea initially, and now you're entering a guilty plea, nobody tried to force you into making this deal?

ACC: No, sir, no one did.

MJ: Very, well.

MJ: Now, the last paragraph bothers me. "I agree to request that the court be composed of the military judge alone. This request will be made with full knowledge of my right to be tried by a court composed of officers and enlisted personnel. The foregoing agreement as to request for trial by military judge alone was made after full consultation with my counsel as to the ramifications of such an agreement." Who put that in there, Captain Threlkeld?

TC: That was included in there between the convening authority, your Honor, and the accused and his counsel.

DC: May it please the court, the convening authority made it perfectly clear that when the defense offered this to the convening authority as a consideration, that there was no obligation by the defense to enter into an agreement; there's no requirement that it be by judge alone. That was the defense's offer—part of the defense's offer, and—with full knowledge of the accused at the time. It was voluntarily made on the part of the accused. The inclusion of this statement in the pretrial agreement is pursuant to the JAG Manual, the paragraph that states that all—there will be no informal understanding. All understandings will be in writing.

MJ: If you want, Corporal Schmeltz, to be tried by a full court you have that right. Are you sure that you understand that?

ACC: Yes, sir, I do.

MJ: Do you feel that you want to be tried by me alone?

ACC: Yes, sir, I do.

MJ: Is it your understanding, having discussed this with your counsel, and I'll ask you, Captain Sears, that there's no deal—there's no agreement unless you go judge alone?

DC: No, your Honor.

MJ: Did somebody on the government's side say, "Look, you don't get a deal unless you go judge alone"?

DC: No, your Honor. This was not the case. In order to encourage the government to enter into the agreement this was offered by the defense.

MJ: It was offered by the defense?

DC: Yes, your Honor.

MJ (to ACC): Is that correct?

ACC: Yes, sir.

MJ: Very well.

MJ: In the very last paragraph at subparagraph 5., it says, "I further understand that this agreement will be automatically cancelled upon the happening of any of the following events: my failure to request trial before military judge alone or the military judge not approving my request." You are telling me this was your idea? The defense's idea?

DC: Yes, your Honor. We presented this as a portion of our inducement to the—to entering into the pretrial agreement. The idea of going with judge alone originated with the defense. It originated with me after careful consideration and consultation with the accused in this case; explaining, as we've gone over before his—all the alternatives and his rights to trial by members and enlisted members.

MJ: Nobody tried to force you—to get you to put this in your agreement?

DC: No, your Honor. The idea originated with the defense.

MJ (to ACC): Is that correct?

ACC: Yes, sir, it is.

In addition, the accused added that he was "not pleading guilty because of the deal." The pleas were duly accepted. The Government offered no evidence as to those

offenses to which the accused pleaded not guilty, and the military judge entered findings of not guilty as to them.

Before us, appellate defense counsel contend that the provisions of the pretrial agreement regarding the accused's offer to elect trial by judge alone and that the agreement would not be binding if the judge refused to approve such a request are contrary to public policy and should be held to vitiate the pleas. On the contrary, the Government argues that the cited provisions are not contrary to public policy but are in agreement with it. It points out that there is no constitutional right to jury sentencing and that, indeed, 47 out of 50 American jurisdictions provide only for sentencing by a judge in the event of a plea of guilty. It urges, therefore, that we approve the agreement's terms.

We need not decide the issue of public policy posed by the advocates at this level. This Court has never expressed full satisfaction with the practice of plea bargaining in the armed services. It has, however, repeatedly stated that pretrial agreements should concern themselves only with bargaining on the charges and sentence. *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972); *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968).[1] As a majority of the Court of Military Review below noted:

> [T]he advisability of including such a condition in pretrial agreements . . . does not look good. It does in some respects have the appearance of evil which should always be avoided.

Convening authorities would do well to heed this language as well as our holdings in *United States v. Troglin, supra*, and *United States v. Cummings, supra*. Thus, while we do not condone the provisions here involved, there is not the slightest indication in this case that the accused's agreement or any of its terms originated with the convening authority or any agent of the Government. Rather, the record expressly indicates that the condition of trial by judge alone sprang from the accused and his counsel without any hint or suggestion by the Government. It was, in the words of counsel and the accused, "the defense's offer—part of the defense's offer, and—with full knowledge of the accused." It was inserted in the agreement "[i]n order to encourage the government to enter into the agreement." The accused fully understood his right to elect trial by a full court or judge alone and reiterated that desire to the judge during the discussion. What counsel said bears repeating:

> The idea of going with judge alone originated with the defense. It originated with me after careful consideration and consultation with the accused in this case; explaining, as we've gone over before his—all the alternatives and his rights to trial by members and enlisted members.

Moreover, the convening authority, in the defense's own words, "made it perfectly clear that . . . there was no obligation by the defense to enter into an agreement; there's no requirement that it be by judge alone."

In *United States v. Lallande*, 22 U.S.C. M.A. 170, 173, 46 C.M.R. 170, 173 (1973), we stated:

> The conditions in this case were proffered by the accused in his offer to plead guilty, with an accompanying memorandum acknowledging his understanding of their meaning and effect. They are the exclusive product of his own, voluntary effort, not a response to a demand by the Government that they be accepted "or else." Nor does it appear that the accused obtained the conditions only at the price of surrendering a constitutional right that could affect his guilt or the legality of his sentence. Compare *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968) and *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972). The accused's consent to the conditions, therefore, is factual, not fictional. Arguably, the accused ought not be allowed now to retain the advantages of

---

1. *See also United States v. Scoles*, 14 U.S.C. M.A. 14, 33 C.M.R. 226 (1963); *United States v. Darring*, 9 U.S.C.M.A. 651, 26 C.M.R. 431 (1958).

**12**

the pretrial offer but cast off its restraints.

Seldom has a case presented a stronger basis for holding the accused to accountability for the terms of an agreement which he and his counsel proposed and in return for which he received the substantial consideration of the elimination of one-half the charges against him and limitation of the maximum sentence to one-sixth of the possible penalty. Here, there is no doubt the agreement was a freely conceived defense product. It did not concern the waiver of a constitutional right or a fundamental principle, but only the accused's agreement to elect one of the two sentencing agencies open to him under the applicable statute. See Article 16, Uniform Code of Military Justice, 10 U.S.C. § 816. As the entire matter originated with him and his counsel, we are loath to permit him at this level to attack his own action and to claim relief therefrom.[2]

The decision of the Court of Military Review is affirmed.

Judge COOK concurs.

Judge QUINN did not participate in the decision of this case.

---

2. We may add that the agreement here offered no pressure on the military judge to approve the accused's request for a trial without members. The accused's request was examined, explained to him, and approved by the judge before he was aware of the agreement or its terms.