UNITED STATES, Appellee,

v.

Specialist Six Stephen C. BROWN, SSN
315–50–9434, United States
Army, Appellant.

CM 435356.

U. S. Army Court of Military Review.

9 Nov. 1977.

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain Demmon F. Canner, and Captain Larry C. Schafer, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major Steven M. Werner, JAGC, Captain Gary F. Thorne, JAGC, and Captain Laurence M. Huffman, JAGC, were on the pleadings for appellee.

Before FULTON, MOUNTS and TALIAFERRO, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The appellant was charged with uttering 29 checks without sufficient funds, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a, and certain other offenses, for which the maximum au-

thorized punishment included dishonorable discharge, confinement for more than 100 years, total forfeitures, and reduction to the lowest enlisted grade. He negotiated an agreement with the convening authority whereby some charges were dropped, another was reduced, and the convening authority agreed to suspend all confinement under conditions mentioned below. A military judge convicted the appellant in accordance with the pleas and sentenced him to a dishonorable discharge, confinement for seven years, total forfeitures, and reduction to Private E–1. The convening authority approved the sentence, but, in accordance with the plea bargain, suspended the confinement for one year with provision for automatic remission.

Twenty-six of the bad checks, valued at $6,900.07, were issued to Army and Air Force Exchange Service facilities in the Canal Zone. The remaining three were issued to a camera store ($990.00), a coin seller ($287.00), and a travel agency ($1,272.00). The plea bargain contains the following provisions:

> Furthermore, I understand that as a condition to acceptance . . . of this offer to plead guilty, I will provide restitution in an amount in excess of four thousand dollars payable to the payees prior to approval of the sentence by the convening authority as noted in Appendix I. If I should fail to provide such restitution, I understand that the convening authority will not be bound by the terms found in Appendix I.

Appendix I reads in substantial entirety as follows:

> I . . . offer to plead guilty . . provided that the convening authority will suspend any confinement adjudged for a period of one (1) year during which time I will be required to make full restitution of all my checks which have been dishonored because of insufficient funds. I understand that if I fail to provide full restitution before the end of the period of

suspension of confinement, said suspension shall be vacated. I understand further that if I do provide full restitution, and proof thereof, any sentence of confinement and suspension thereof will be thereby remitted.

Naturally the provisions of this agreement were not attacked at the trial, where the trial judge attempted to inquire fully into them.[1] On appeal, however, the appellant asserts that such provisions are contrary to public policy and are void. He also asserts that his plea was improvident because of a misunderstanding as to the effect of the agreement in that he believed that he would be granted excess leave so that he could obtain civilian employment pending appellate review. Finally, he contends that the agreement was violated by depriving him of his post-trial liberty through an administrative restriction. We will examine these contentions in turn.

I

■ We reject the appellant's contention that the restitution provisions are void because of being contrary to public policy. Such provisions concern themselves solely with the bargaining on the charges and sentence and do not attempt to influence the trial process. *Compare United States v. Holland*, 23 U.S.C.M.A. 442, 50 C.M.R. 461, 1 M.J. 58 (1975), *and United States v. Boyd*, 54 C.M.R. 312, 2 M.J. 1014 (A.C.M.R. 1976), *with United States v. Schmeltz*, 23 U.S.C.M.A. 377, 50 C.M.R. 83, 1 M.J. 8 (1975). They are, as the trial judge correctly concluded, conditions of probation such as the Court of Military Appeals sanctioned in *United States v. Lallande*, 22 U.S.C.M.A. 170, 46 C.M.R. 170 (1973). In addition, the trial judge interpreted the agreement as binding the convening authority if the appellant, acting in good faith, was unable to make the required restitution through no fault of his own, and he assured on the record that the parties understood and agreed with that interpretation. *See Unit-*

---

1. The case was tried several days before the effective date of the procedures prescribed by *United States v. Green*, 52 C.M.R. 10, 1 M.J.

453 (C.M.A. 1976). Nevertheless, the trial judge conducted a commendably thorough plea bargain inquiry.

ed States v. Rodgers, 49 C.M.R. 268 (A.C.M.R.1974); *cf. United States v. Vinyard*, 3 M.J. 551 (A.C.M.R.1977) (inability to pay fine).

## II

Even if the restitution requirement is not void, the appellant contends, his guilty plea was improvident because he was led to believe erroneously that he would be granted excess leave, in which status the higher pay of civilian employment would enable him to meet the restitution requirement. This belief stemmed from a prediction made to him by his trial defense counsel. The convening authority denied the appellant's post-trial request for excess leave (leave without pay). The reasons are not recorded, but it appears that Army policy forbids granting excess leave to one whose unserved sentence to confinement has been suspended rather than deferred. Army Regulation 630–5, paragraph 5–2d(4), 1 June 1975; *cf. United States v. Lentz*, C.M.R. (A.C.M.R. S12093, 20 Sept. 1976), *rev'd*, 25 U.S.C. M.A. 313, 54 C.M.R. 829 (1977) (involving change of negotiated suspension to deferment to permit excess leave).

■ Possibly in a civilian setting false hopes inspired by a defendant's own counsel would not command appellate attention on the question of providency. In the armed forces, however, there are countervailing considerations. The designated counsel are government lawyers, assumed to be famil-

iar with the myriad laws and regulations pertaining to military status, or, at least, able readily to obtain authoritative interpretations. Among such laws, for example, are those that may require a measure of restitution even without any agreement,[2] those prohibiting pay while confined with a suspended dishonorable discharge,[3] those resulting in nonentitlement to pay while confined after the expiration of a term of service,[4] and those potentially restricting civilian employment.[5] We are not prepared to say that assigned counsel's misadvice as to the incidents of a particular sentence could not render his client's guilty plea improvident.

■ Under the circumstances of this case, however, the denial of excess leave did not cause the plea to become improvident. The grant of excess leave was neither depicted nor understood as a certainty. The prospect of civilian employment and the quantum of income attributable thereto were speculative.[6] It is not asserted that the convening authority or anyone representing him fostered the belief that excess leave could be granted, nor is there any showing that approval of leave was within the discretion of the convening authority. Approval of excess leave was not included as part of the pretrial agreement. Neither was it mentioned when the military judge sought to discover how restitution was going to be made and whether there were any understandings not included in the written pretrial agreement.[7] Moreover, the possi-

2. *See* 37 U.S.C. § 1007(c); Article 139, UCMJ, 10 U.S.C. § 939.

3. 37 U.S.C. § 804.

4. Department of Defense, Military Pay and Allowances Manual, paragraph 10316b (1 Jan. 1967), as changed by Change 42 (19 Mar. 1976).

5. *See* 10 U.S.C. § 974.

6. That appellate review would remain pending throughout the year in which restitution was to be effected was speculative, too. Unfortunately for the justice system, but perhaps fortunately for this appellant, that has proved to be the case.

7. The colloquy regarding the manner of restitution and the absence of understandings aliunde the written agreement related contextually to the requirement for partial restitution before the convening authority's action. Unfortunate draftsmanship concealed the provision requiring full restitution within the quantum portion of the agreement (Appendix I), which the trial judge properly did not review until after he had adjudged a sentence. By that time, he had been given to understand that the appellant's family was assisting in making restitution and he had the parties' understanding that the convening authority would nevertheless be bound if the appellant, without fault on his part, could not make restitution. There was no evident need for him to inquire further at that point, and he did not.

bility of being on excess leave was admittedly material only to that part of the plea bargain relating to restitution, which the trial judge correctly and conclusively interpreted as continuing to bind the convening authority if the appellant, through no fault of his own, was unable to comply with the restitution requirements. This effectively mooted any adverse impact of not being placed on excess leave pending appellate review.

### III

█ The appellant's final contention is that the plea bargain was not kept because, although he was not confined, his liberty was restrained after the trial. He asserts that a pretrial restriction was continued after the trial (9 September 1976) until the intervention of his command sergeant major and his defense counsel early in February 1977.

We could not condone any effort by subordinate authorities to substitute punishment of their own for that denied—indeed bargained away—by the court-martial convening authority. We do not, however, believe that this is such a case. The appellant's successive company commanders assert that the restraint was lifted about ten days after the trial and that none was thereafter imposed unless for a separate infraction. Even conceding the accuracy of the appellant's view, the deprivation evidently was not onerous. It is not shown to have amounted to more than the mere withdrawal of automatic pass privileges; nor is it alleged that the appellant could not have left Fort Clayton at his specific request.

Even if sentence relief were appropriate on these facts, no practical relief can be afforded now. The period for which confinement was suspended now has lapsed and presumably that portion of the sentence has been remitted.

The findings of guilty and the sentence are affirmed.

Judge MOUNTS and Judge TALIAFERRO concur.