UNITED STATES, Appellee,

v.

Specialist Five Steven MILLS, SSN
248–02–1444, United States
Army, Appellant.

CM 437370.

U. S. Army Court of Military Review.

28 April 1980.

Lieutenant Colonel John F. Lymburner,
JAGC, Major Lawrence D. Galehouse,
JAGC, and Captain Allan T. Downen,
JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC,
Major David McNeill, Jr., JAGC, and Major
Douglas P. Franklin, JAGC, were on the
pleadings for appellee.

Before MITCHELL, DRIBBEN and
WATKINS, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

**DRIBBEN, Judge:**

Contrary to his pleas, appellant was convicted by a general court-martial on 16 May 1978 of attempted sale of heroin, escape from custody, and possession of marihuana in violation of Articles 80, 95, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 895, and 934, respectively. The convening authority set aside the finding of guilty of escape from custody, approved the remaining findings of guilty and so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for seven years, forfeiture of $300.00 pay per month for 96 months, and reduction to Private E–1.

In our prior decision, we affirmed the findings of guilty approved by the convening authority but set aside the sentence and authorized a rehearing thereon for the reasons enumerated in our opinion at 7 M.J. 664 (ACMR 1979). That rehearing resulted in a sentence to a dishonorable discharge, confinement at hard labor for seven years, forfeiture of $300.00 pay per month for eight years, and reduction to Private E–1. The convening authority approved the sentence but deferred the service of confinement at hard labor and forfeitures until the sentence is ordered into execution unless sooner rescinded.

### I

Prior to his rehearing appellant in a written offer waived his right to call certain witnesses in extenuation and mitigation and agreed to stipulate to their expected testimony. In exchange, the convening authority agreed to defer any confinement pending appellate review. He also agreed that upon completion of appellate review he would exercise his clemency power and remit any sentence in excess of reduction to the grade of Private E–1, confinement for fifteen months, forfeiture of $300.00 pay per month for fifteen months, and a dishonorable discharge. The practical effect to the appellant was that he would face no more confinement than already served. The agreement was conditioned upon the adjudged sentence being approved after completion of appellate review. There was a provision that the sentence could be reassessed by the Court of Military Review or modified by The Secretary of the Army. However, in the event a rehearing is directed the agreement is to be cancelled. At a subsequent rehearing the maximum punishment would be controlled by Article 63(b), UCMJ, 10 U.S.C. § 863, and paragraph 81*d* (1), Manual for Courts-Martial, United States, 1969 (Revised edition). This would be the sentence imposed at the first rehearing. The convening authority would not be obliged to remit any portion of a sentence adjudged up to this limitation. Therefore appellant, by virtue of an appeal resulting in a rehearing, could serve more confinement than that provided for in his agreement.

### II

Appellant initially contends that it is impermissible for an accused to bargain away the right to compulsory process of witnesses in extenuation and mitigation for a limitation on the sentence by the convening authority. He argues that, as military accused are entitled to compulsory process for witnesses on the question of sentencing,[1] waiver of such a right is contrary to public policy and void.

For over a decade, it has been stated that pretrial agreements should concern themselves only with bargaining on the charges and sentences. *United States v. Schmeltz*, 1 M.J. 8 (C.M.A.1975); *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972); *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968). Nevertheless, the Court of Military Appeals and this Court have on occasion upheld ancillary conditions which impact upon the waiver of fundamental rights. *See United States v. Schmeltz, supra* (an agreement by the accused to request trial

---

1. *United States v. Stewart*, 4 M.J. 569 (A.C.M.R.1977) and cases cited therein.

by military judge alone).[2] The courts have further sanctioned an agreement which conditions the convening authority's obligation upon the continued good behavior of the accused, *United States v. Lallande*, 22 U.S. C.M.A. 170, 46 C.M.R. 170 (1973); *United States v. Alvarez*, 5 M.J. 762 (A.C.M.R. 1978); *see also United States v. French*, 5 M.J. 655 (N.C.M.R.1978); *United States v. Rankin*, 3 M.J. 1043, 1044 (N.C.M.R.1977);[3] a provision releasing the convening authority from the agreement if the accused does not plead guilty at a rehearing, if any, directed by the convening authority or higher authority, *United States v. Stoutmire*, 5 M.J. 724 (A.C.M.R.1978); *United States v. Thomas*, 6 M.J. 573 (A.C.M.R. 1978), *affirmed* 8 M.J. 216 (C.M.A.1980); *United States v. Hill*, 7 M.J. 580 (A.C.M.R. 1979), *affirmed* 8 M.J. 217 (C.M.A.1980); and a waiver of the Article 32, UCMJ, investigation by an accused provided the convening authority accepted his offer to plead guilty which was conditioned on the convening authority directing the trial counsel to offer no evidence as to a charge of attempted murder, *United States v. Walls*, 8 M.J. 666 (A.C.M.R.1979).

■ In this case as in *United States v. Schmeltz*, *supra*, there is not the slightest indication that the accused's agreement or any of its terms originated with the convening authority or any agent of the Government. Rather, the record indicates that the condition originated with the accused and his counsel without any hint or suggestion by the Government. Trial defense counsel fully explained the meaning of the agreement for the benefit of the military judge. The military judge also determined that appellant understood each condition of the agreement to include sentence limitations. The appellant acknowledged that he fully understood all terms and conditions of the agreement and that he was nevertheless willing to abide by it. Furthermore, appel-

lant is not precluded by this agreement from exercising his right to present evidence on extenuation and mitigation. *Cf. United States v. Allen*, 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957); *United States v. Callahan*, 22 C.M.R. 443 (A.B.R.1956). Thus, this provision avoids the evil condemned in *Cummings, supra*, of transforming the trial into an empty ritual. The provision merely changes the nature of the appellant's evidence on extenuation and mitigation from "live" testimony to testimony by stipulation. This is a practice which is on occasion the subject of an agreement between an accused and trial counsel without any promise of reward. We see no reason in law or public policy why the accused should not be allowed to resort to arms length bargaining to obtain substantial benefits of this nature, so long as he is not altogether precluded from presenting evidence in extenuation and mitigation. *See Bordenkircher v. Haynes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

### III

Appellant also argues that his agreement with the convening authority, which creates the possibility of serving additional confinement if his appeal results in a rehearing being authorized, whether on findings or sentence or sentence alone, places a chilling effect on his right to seek appellate relief under Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866 and 867. He claims that a penalty will be placed upon him for successfully pursuing his right to appeal and that there is an element of vindictiveness in the requirement that he lose all benefit of his "offer to stipulate" should a rehearing be authorized.

■ We find neither a penalty imposed nor an element of vindictiveness involved. The United States Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) held that an

---

**2.** *Compare* with *United States v. Boyd*, 2 M.J. 1014 (A.C.M.R.1976) which held a provision requiring the accused waive his right to trial before a court with members as improper.

**3.** However, this issue is now again before the Court of Military Appeals, *see United States v. Dawson*, C.M. 438463 (A.C.M.R. 27 December 1979), *pet. granted* No. 38,445 (C.M.A. 2 April 1980).

accused who appeals his conviction may be subjected to a more severe sentence on retrial than was adjudged at his initial trial provided that vindictiveness against the defendant for having successfully attacked his first conviction plays no part in arriving at a subsequent sentence.[4] The accused who stands before a military court has less to fear from a retrial in that Article 63(b), UCMJ, and paragraph 81*d*(1) of the *Manual, supra*, set a new maximum limitation upon the punishment which may be imposed. That maximum is the sentence which was lawfully adjudged and approved by the convening authority. The accused does not have a constitutional or statutory right to clemency from the convening au-

thority. That is a matter which is within the sole discretion of the convening authority.[5]

On the basis of the entire record, including the findings of guilty heretofore affirmed by this Court on 30 April 1979, the sentence if AFFIRMED.

Senior Judge MITCHELL and Judge WATKINS concur.

4. The appellant in *North Carolina v. Pearce*, 395 U.S. 711, 722, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969), based his argument in part upon a denial of equal protection under the Constitution. The appellant contended that since convicted accuseds who do not seek new trials cannot have their sentences increased, it creates an invidious classification to impose that risk only upon those who succeed in getting their original convictions set aside. The court in answering the appellant's argument stated:

> The other argument advanced in support of the proposition that the Constitution absolutely forbids the imposition of a more severe sentence upon retrial is grounded upon the Equal Protection Clause of the Fourteenth Amendment. The theory advanced is that, since convicts who do not seek new trials cannot have their sentences increased, it creates an invidious classification to impose that risk only upon those who succeed in getting their original convictions set aside. The argument, while not lacking in ingenuity, cannot withstand close examination. In the first place, we deal here, not with increases in existing sentences, but with the imposition of wholly new sentences after wholly new trials. Putting that conceptual nicety to one side, however, the problem before us simply cannot be rationally dealt with in terms of "classifications." A man who is retried after his

first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. The result may depend upon a particular combination of infinite variables peculiar to each individual trial. It simply cannot be said that a State has invidiously "classified" those who successfully seek new trials, any more than that the State has invidiously "classified" those prisoners whose convictions *are* not set aside by denying the members of that group the opportunity to be acquitted. To fit the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished.

5. The action of the convening authority on the sentence is subject to review by this Court. *Compare Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), where the Supreme Court condemned a procedure whereby the prosecutor would retaliate upon an accused who exercised his right under state law to a trial *de novo* on a misdemeanor charge by exercising his discretion to substitute a more serious charge for the original one and thus subject him to a significantly increased potential period of incarceration.