Tony C. SATTERFIELD, U.S.
Navy, Petitioner,

v.

Kenneth W. DREW, Captain, Military
Judge, U.S. Navy, Respondent.

Misc.Dkt. No. 84–04.

U. S. Court of Military Appeals.

March 12, 1984.

For Petitioner: *Major Michael E. Canode,*
USMC, and *Lieutenant Christopher D.*
*Johnson,* JAGC, USNR.

For Respondent: *Commander W.J.*
*Hughes,* JAGC, USN, and *Lieutenant Com-*
*mander R. Clayton Seaman, Jr.,* JAGC,
USN.

*Opinion of the Court*
EVERETT, Chief Judge:

I

On April 21, 1983, petitioner was charged in a single specification with wrongful use of marihuana "on or about the period 27 March 1983 to 5 April 1983," in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. On May 24, 1983, the Commanding Officer of the Naval Air Station at Norfolk, Virginia, referred the charge for trial by special court-martial.

Before trial, the military judge convened an Article 39(a)[1] session on August 1, 1983; at that time the defense made several motions. Among them was a "Motion to Dismiss on the Ground that Trial would Violate Equal Protection and Due Process of Law." This motion was predicated on an alleged difference between the Navy and other armed services in the analysis of urine samples by means of Gas Liquid Chromato-

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

graph (GLC)—the test to which appellant's sample had been subjected. According to the motion, the Navy was utilizing a "cut-off" or threshold requirement of 50 nanograms per milliliter in its GLC testing, while the Air Force and the Army employed a 75-nanogram minimum in determining whether the results were positive. Thus, a sailor might be identified as a drug user under circumstances when a soldier or airman would not be.

The judge considered the motion extensively in light of Department of Defense Directive 1010.1, dated March 16, 1983, which established a drug-abuse testing program for the military services and authorized the testing of urine specimens for evidence of drug presence. Under the judge's interpretation of the Directive, it "requires, or it envisions screening sensitivity levels to be established by memorandum, promulgated by the Assistant Secretary of Defense for Health Affairs." In light of this interpretation, he ruled:

The evidence before me indicates that no such established levels have been promulgated. Indeed, counsel have suggested that the services have established their own levels in an effort to fill the vacuum that exists. In viewing the whole of the DOD Directive, I consider that the military services did not have authority under the provisions of the directive to establish separate drug abuse testing programs. Rather, there is one program, and that is the program I envisioned as established by the directive, itself.

I find that that program is intended to apply to all services—military services, that is, and to the service men and women on active duty within those services. To the extent that under present practices of the services they are not in accord, and with regard to the testing sensitivity levels as required in the directive, I find that to bring this accused to trial on the basis of test results of his urine would be the result of an impermissible exercise of unfettered discretion, not envisioned in the directive, nor indeed, delegated by the terms of the directive, and would

result in a denial of due process to Petty Officer Satterfield.

Now, as to remedies, the motion as before me asks for a dismissal of the Charge. I do not find that dismissal of the Charge is required or appropriate; however, I will suppress the utilization against this accused of any evidence that was obtained as a result of the lab analysis on his urine.

To this ruling the trial counsel responded:

Your Honor, at this time the government requests an extended, I guess we would call this an extended recess in order for the convening authority to make a decision as to whether or not it wishes a reconsideration by the court on this issue.

The ensuing discussion, as reflected in the record, was to this effect:

MJ: I won't grant a recess for that purpose. I can envision that maybe the convening authority would ask me to reconsider, and I can't see that why on the basis of what I've decided that I would accede to any different result, even though I agreed to reconsider.

TC: All right, sir. At this point, the government withdraws without prejudice this Charge based on the grounds of lack of sufficient evidence at this time.

MJ: All right. Any objections?

DC: The defense has no objection, Your Honor.

MJ: All right. Apparently, there is no further business before the court with regard to this accused or this specific Charge. Is that my—am I correct in my understanding?

TC: That is correct, Your Honor. The Charge is withdrawn.

MJ: All right. The court is adjourned. The Article 39(a) Session adjourned at 1333 hours, 1 August 1983.

On August 5, 1983, another Article 39(a) session took place, which commenced with an announcement by the judge that he had received a written motion from the government requesting an Article 39(a) Session to reconsider, or to request the court to reconsider a motion to suppress

certain evidence that was entered of record on the last session.

The judge noted that "[t]he record right now reflects that the Specification has been withdrawn"; but he added that the Government's "brief indicates that that may not, in fact, be the case, and I'm going to ask you to clarify that for record purposes right now."

The trial counsel's explanation was:

After the court's ruling on 1 August 1983, trial counsel asked for a recess, and it may have been inartful, perhaps the trial counsel should have asked for a continuance to consult with the convening authority to see whether or not they desired to see a copy of the record of trial and see if they wanted to request reconsideration on the court's ruling on that particular motion.

Well, once the military judge denied the trial counsel's request for the recess, trial counsel was kind of caught short by that denial, and was, frankly, afraid that the court was preparing to go forward on the Charge without evidence.

The judge responded that it would be necessary to determine "whether or not the convening authority did, in fact, withdraw the Specification, or whether or not that Specification is still referred in accordance with his endorsement on his charge sheet." There followed this colloquy:

TC: Yes, sir. Your Honor, trial counsel had never even discussed the issue of the possibility of it even coming up with the convening authority. Trial counsel took it completely upon himself when trial counsel told the convening authority—

MJ: I recognize that, but the problem is, has the convening authority withdrawn the Specification or not?

TC: No, Your Honor, he has not.

MJ: So, he has not, in fact, withdrawn the Specification?

TC: No, he has not, Your Honor.

MJ: I think that that is what the record needs to reflect. If that, in fact, is the case, then I don't have any problem with the jurisdiction aspect of it.

The defense objected and maintained that the convening authority was bound by the action of his trial counsel and the reliance by the defense on that action. When asked whether he challenged trial counsel's statement "that, in fact, the convening authority did not authorize or direct the charges to be withdrawn," defense counsel replied:

Your Honor, I attempted to converse directly with the convening authority yesterday. I got as far as the XO, Captain Anderson of the Naval Air Station, and he said that he was unaware of whether or not the captain has the—had, in fact, or had not, in fact, granted that authority. So, evidently, trial counsel is the only one in a position to know the answer to that question, and all we can do is hopefully rely upon his assertions of what the convening authority intends to do today.

Subsequently, the judge proceeded to reconsider his earlier ruling. In this connection, he considered, over defense objection, the affidavit of Major R. Dennis Smith, United States Air Force, who was assigned to the office of the Deputy Assistant Secretary of Defense for Health Promotion (OASD (Health Affairs)), and who had drafted DOD Directive 1010.1. In his affidavit, Major Smith asserted that it had been the intention "of the Assistant Secretary . . . to develop recommended confirmation sensitivity levels for use in the DOD drug abuse testing program" but "[u]ntil such sensitivity levels were established, however, it was the intent of the Assistant Secretary that each Military Department set its own confirmation sensitivity levels."

Ultimately, the judge ruled upon reconsideration that the Government's evidence should not be suppressed "on the basis of this particular issue." Thereupon, the defense asked to *voir dire* the military judge about a conversation with the Chief Judge, Captain Oliver Price, of the Navy Trial Judiciary, which had occurred after the original ruling on the defense motion. The judge averred that, although such a conversation had occurred, it had not influenced in

any way the decision that he had reached upon reconsideration.

Before trial resumed, petitioner requested our Court for extraordinary relief. In their briefs and oral argument on the petition, counsel have ably dealt with several interesting issues. However, the petition can be disposed of on rather simple grounds.

## II

■ The Manual for Courts-Martial permits the convening authority to "withdraw, or cause to be withdrawn, any specification or an entire case from the consideration of any court for any reason." However, "both the grounds upon which the specification or case is withdrawn and the time at which the withdrawal is directed will have an effect upon the action that may subsequently be taken." Para. 56a, Manual for Courts-Martial, United States, 1969 (Revised edition).

Although action to withdraw a charge "may be taken only when directed by the convening authority, who may give such a direction either on his own initiative or on application made to him," see para. 56a, Manual, supra, we do not interpret this Manual provision to require that, in every instance, the convening authority must specifically approve the withdrawal without prejudice of a charge or specification. Instead, because he must act through agents in such matters—typically the trial counsel of the court-martial, see para. 56d, Manual, supra—the convening authority, if he chooses, may provide general guidelines for such action by his agents.[2]

We also find nothing in the Manual which precludes the use of the law of agency in determining what authority a trial counsel possesses when he acts as agent for the convening authority. Instead, the reference in paragraph 56a to "a direction" by the convening authority should be construed as encompassing withdrawal of a charge by the trial counsel when he acts within his actual authority.

The rules governing the scope of actual authority are well established:

Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess. The actual authority may be either express or implied.

3 Am.Jur.2d Agency § 69 (footnote omitted).

The actual authority of an agent may be, and frequently is, implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question. The implied authority of an agent is to be distinguished from his apparent authority, and may be characterized in brief as actual authority, circumstantially proven, which the principal is deemed to have actually intended the agent to possess. Such implied authority may arise independently of any express grant of authority, as from some manifestation from the principal that the particular authority in question shall exist in the agent, *or it may arise as a necessary or reasonable implication in order to effectuate other authority expressly conferred. Implied authority embraces authority to do whatever acts are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent. Also, in the case of a sudden emergency or unforeseen situation arising after the authorization is given and not provided for in the agency agreement, the agent, if he cannot communicate conveniently with the principal, has the implied power to take such steps as he may deem necessary to protect the interests of his principal.*

85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Thus, withdrawal of the charges—perhaps because of unforeseen or changed circumstances—does not imply that the charges should not have been initially referred for trial.

---

2. A decision to refer a charge in the first instance is distinct conceptually from a decision whether to proceed with prosecution of that charge—just as an indictment is distinct from a nolle prosequi. Cf. United States v. Cox, 342 F.2d 167 (5th Cir.), cert. denied, 381 U.S. 935,

3 Am.Jur.2d Agency § 71 (emphasis supplied; footnotes omitted).

To effectuate an authority conferred upon an agent, there will be implied the authority to adopt any recognized usage or mode of dealing in that business. That is, an agent will be deemed to have implied authority from his principal to do business in his behalf in accordance with the general custom, usage, and procedures in that business. The fact that the principal is not aware of the exact character of the custom or usage is not material if he has notice that usages of such nature may exist.

3 Am.Jur.2d Agency § 72 (footnotes omitted).

■ At the Article 39(a) session on August 1, trial counsel was confronted with a judge's ruling which apparently was unforeseen and which made it impossible for him to proceed successfully with trial of the case at that time. Moreover, he had been denied a requested recess to allow consultation with the convening authority about the judge's ruling. If he went to trial and the charges were dismissed for lack of evidence, the accused would be entitled to the benefits flowing from the attachment of jeopardy and could not be tried again. See Article 44, UCMJ, 10 U.S.C. § 844. On the other hand, if trial counsel withdrew a charge without prejudice on the ground of insufficiency of the evidence at that time, the convening authority would be entitled to rerefer the charges for trial or—even without regard to the accused's preferences, if he was "attached to or embarked in a vessel," Article 15, UCMJ, 10 U.S.C. § 815 —to impose nonjudicial punishment on him, see Dobzynski v. Green, 16 M.J. 84 (C.M.A. 1983).[3]

The convening authority—as a representative of the Government—has an interest in the prosecution of crimes. In view of the "sudden emergency" and "unforeseen situation" confronting him, trial counsel could best—indeed, only—protect that interest in the case by withdrawing the charge without prejudice.[4] Under these circumstances, trial counsel had implied authority to withdraw the charge without prejudice, because this action was "necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to" him when the convening authority appointed him to prosecute the case.

When a prosecutor has no procedure available by which he may appeal adverse rulings on a motion to suppress, it is not unusual for him to dismiss the charges and renew the prosecution at a later time. See 3 LaFave, Search and Seizure § 11.2(f), p. 529 (1978). Indeed, such action falls well within "the general custom, usage, and procedures in" the "business" of prosecuting cases. Furthermore, we would assume that most convening authorities would expect— and wish for—a trial counsel to take action when, in his professional judgment, it is called for.

In many of the records of trial we review, a trial counsel announces the withdrawal or dismissal of various charges and specifications—sometimes with prejudice and sometimes without. Rarely, if ever, does a military judge question the trial counsel about his authorization to take such action under paragraph 56a of the Manual. Probably this absence of inquiry reflects the judge's recognition that a trial counsel has actual authority to make such tactical decisions as are incident to "the main authority expressly delegated to" him when the convening authority appointed him in the court-martial orders to prosecute a case. Similarly, in light of the rules governing the implied authority of agents, we have no doubt that in the case at bar trial counsel, in withdrawing the charge without prejudice, did not act in an *ultra vires* manner.

The absence of any reliance by the defense on the withdrawal without prejudice would be significant if we were dealing

---

**3.** As far as we can determine from the charge sheet, petitioner was not "attached to or embarked in a vessel."

**4.** Under procedures for appeal by the Government which now have been authorized by the Military Justice Act of 1983, Pub.L. No. 98–209, 5(c)(1), 97 Stat. 1393, 1398, trial counsel might have another alternative to pursue if a similar situation arose in the future.

with *apparent* or ostensible authority. *See, e.g.,* 3 Am.Jur.2d Agency § 73. However, since we are concerned instead with *actual* authority, reliance by the defense is not necessary for the withdrawal of the charge to be effected.

After the charge was withdrawn by trial counsel, some positive action on the part of the convening authority was necessary to place it before a court-martial again. However, the convening authority has never re-referred the charge. Because the charge against petitioner has not been pending before a court-martial for trial after the withdrawal without prejudice on August 1, 1983, all the proceedings subsequent to that date are a nullity.

While the availability of extraordinary relief is limited, it is available where there is "a judicial 'usurpation of power.'" *United States v. LaBella,* 15 M.J. 228, 229 (C.M.A.1983); *see Murray v. Haldeman,* 16 M.J. 74, 76 (C.M.A.1983). Under the circumstances of this case, for the judge to conduct further proceedings after the charge was withdrawn constituted such a usurpation. Therefore, extraordinary relief is appropriate, and we shall grant it.

### III

If the convening authority chooses to re-refer the charge and specification for trial and if then a motion is made to suppress the evidence, the military judge can rule on whatever issues—such as the applicability of collateral estoppel or law of the case—may be presented[5]; and his rulings can be reviewed in regular course. However, in light of the withdrawal of the charge, none of the rulings heretofore made by the judge in this case are before us for a ruling on the merits. Thus, we need not decide what limitations apply to a judge's power to reconsider, on his own initiative or otherwise, rulings he has made on a motion to suppress or on what types of evidence are admissible in the consideration or reconsideration of a motion to suppress. Likewise, we need not inquire into the circumstances and effects of the trial judge's conversation with a superior in the judiciary—although it is ap-

propriate to observe that the record contains no evidence that this conversation either was intended, or acted, as interference with the trial judge's discretion.

### IV

Since the sole charge referred for trial was withdrawn without prejudice on August 1, 1983, all proceedings after that date are a nullity, and no further proceedings shall take place on the charge until such time as the convening authority rerefers that charge for trial.

Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

My views on the implied authority of government agents have been set forth before and need not be repeated here. *See United States v. Brown,* 13 M.J. 253, 260 (C.M.A.1982) (Cook, J., dissenting); *Cooke v. Orser,* 12 M.J. 335, 358 (C.M.A.1982) (Cook, J., dissenting). However, this case has certain significant differences. First, the military judge should not have denied trial counsel's request for a delay to permit him to confer with the convening authority. Only the convening authority has the power to withdraw charges and, in such a situation, the decision should be his alone. Para. 56a, Manual for Courts-Martial, United States, 1969 (Revised edition). Second, trial counsel should not have acted unilaterally to dismiss charges without prejudice (although I concede the difficult position in which he was placed here) without consulting the convening authority. It should have been apparent to the military judge that trial counsel was taken by surprise and could not possibly have coordinated his action with the convening authority. On the other hand, a trial counsel takes many actions during the course of a trial, at the direction of the convening authority, and there is no reason to question his authority in normal situations.

What should have been done here was to rerefer the case to the convening authority for his disposition. Para. 67f, Manual, supra. Since that is what the majority opinion accomplishes, I concur in the result.

---

**5.** *See* 3 LaFave, *Search and Seizure* § 11.2(f), p. 529 (1978).