UNITED STATES, Appellee,

v.

Private First Class Bryan L. CLEMONS, 279–62–0541, United States Army, Appellant.

ACMR 9101842.

U.S. Army Court of Military Review.

16 Sept. 1992.

For Appellant: Captain Robin N. Swope, JAGC, Captain Kurt J. Mayer, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Captain Donna L. Barlett, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before De GIULIO, ARKOW and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

WALCZAK, Judge:

Pursuant to his pleas, the appellant was found guilty by a military judge sitting as a special court-martial, of wrongful use of cocaine (three specifications), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1987) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for five months, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for three months, and reduction to Private E1.

Before this Court, the appellant alleges two assignments of error. First, the appellant alleges that his sentence must be reassessed and significant sentence relief given by approving a sentence of no punishment to negate the effects of unlawful command influence during the presentencing phase of his trial. Secondly, the appellant asserts that the staff judge advocate abrogated his duty to properly advise the convening authority by providing the convening authority with incorrect and misleading information in the addendum to his post-trial recommendation. We find both of these assertions without merit and affirm the findings of guilty and the sentence.

Prior to the appellant's court-martial, his commander, Lieutenant Colonel (LTC) Carlson, called Sergeant (SGT) F, SGT M, Staff Sergeant (SSG) A, and Lieutenant (LT) R, into his office to discuss their actions at the appellant's previous nonjudicial punishment proceeding under the provisions of Article 15, UCMJ. At trial, LTC Carlson testified that he wanted his subordinates to understand that:

> Number One, that we, meaning all of us, need to be careful who we give character references for because the bottom line is, which is Number Two, when you sign that character reference and you sign whatever your name is, underneath that names (sic) goes 'Sergeant, United States Army,' and that special trust and confidence that we place in you and in your judgement may speak for you if you're not present." ... I think it was my solemn obligation to talk to non—talk to these non-commissioned officers about that responsibility.

At trial, pursuant to UCMJ, art. 37, 10 U.S.C. § 837, the appellant initially moved to dismiss all charges and specifications on the basis that there was unlawful command influence in the preferral and referral of his case. Later, the appellant amended the motion for unlawful command influence in the nature of an obstruction of justice allegation—the appellant's ability to interview witnesses was impeded. The appellant introduced unsworn statements of SGT F and SSG A describing their meeting with LTC Carlson. The appellant testified that

even after their meeting with LTC Carlson, SGT F and SSG A were willing to write statements or testify at trial on his behalf. SGT F and SSG A, however, became less enthusiastic when they were informed by the appellant and his counsel that the subject of this meeting was going to be litigated at trial and then informed the appellant that they did not want to testify at his trial. The record is silent as to whether SGT M or LT R was ever willing to testify for the appellant.

After hearing evidence on the motion, the military judge made the following findings of fact:

> The court is convinced by a preponderance of the evidence, first, that Lieutenant Colonel Carlson had the meeting after 29 April 1991; secondly, that he called in only those NCO's who had written statements on behalf of the accused; third, that it was improper for Colonel Carlson to "counsel," with counsel in quotation marks, those NCO's on their statements for the accused; fourth, that the fact that the accused was coming up positive more than one time was known throughout the MEPS Station; fifth, that Lieutenant Colonel Carlson's motivation in having this counseling session was immaterial, the session had a chilling affect [sic] on the NCO's; sixth, that Colonel Carlson's actions do not rise to a level of command influence which denied the accused a fair trial; seventh, that Colonel Carlson's actions create the appearance of having a chilling affect [sic] on the trial; eight, accordingly, the defense motion to dismiss is denied.

The military judge then imposed the following remedies out of an abundance of caution:

> Now, in an abundance of caution, the court will allow the defense the following: first, the Government will not be allowed to call any witnesses in aggravation or to attack the accused's credibility by opinion or reputation testimony; next, that the defense will have latitude in any witnesses that are called; third, that the court will allow the defense to present evidence from the accused as to what he

believes the witnesses might have said about him as substantive evidence either on the merits, as character evidence, or in extenuation and mitigation; and fourth, that the court will allow that portion of Appellate Exhibit VIII, which deals with the accused's character, to be read to the court and be considered both on the merits and in extenuation and mitigation. That's in accordance with M.R.E. 405.

Following denial of the defense motion, the defense elected trial by military judge alone, entered pleas of guilty in accordance with the pretrial agreement, and presented evidence during sentencing in accordance with the military judge's devised remedies. Specifically, the appellant, during his unsworn testimony, read to the Court and presented the unsworn statements of SGT F and SSG A as to what the appellant believed the witnesses might have said about him. The appellant did not, however, make any representations as to what SGT M or LT R would say. Because of the procedures implemented by the military judge, that is, the appellant could present what he believed the witnesses might have said, we conclude that neither LT R nor SGT M had anything to present favorable to the appellant. Additionally, the appellant called LTC Carlson as a witness and was permitted to question him with broad latitude.

In evaluating the effect of unlawful command influence in the appellant's case, the standard for review is as follows:

> [I]n cases where unlawful command influence has been exercised, no reviewing court may properly affirm findings and sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence.

*United States v. Thomas*, 22 M.J. 388, 394 (C.M.A.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see also United States v. Levite*, 25 M.J. 334 (C.M.A.1987).

██ In the instant case, we find that the actions of LTC Carlson, in "counselling" his subordinates concerning their po-

tential testimony, amounted to unlawful command influence. His actions clearly had a chilling effect on their testimony. However, we are also satisfied beyond a reasonable doubt that the command influence had no effect on the appellant's election of trial by military judge alone, his pleas of guilty, or the findings of guilty in this case. Indeed, neither at trial nor on appeal, has the appellant asserted that the unlawful command influence had any impact on these issues. Accordingly, the remaining question for this Court is whether the unlawful command influence had any effect during the presentencing phase of the appellant's trial.

Fortunately, the unlawful command influence was limited to the four subordinates who were "counseled" by LTC Carlson during the 29 April 1991 meeting. Applying the standard announced in *Thomas*, we hold that LTC Carlson's actions in "counseling" the four subordinates had a chilling effect, but that this command influence was limited to the audience of four present in the 29 April meeting. We are satisfied that the remedies tailored by the military judge cured whatever effect LTC Carlson's actions had in appellant's trial. These remedies were meaningful and afforded the appellant greater opportunities to present favorable evidence during the presentencing hearing. *See e.g., United States v. Giarratano*, 20 M.J. 553 (A.C.M.R.1985), *affirmed, United States v. Thomas*, 22 M.J. 388, at 399; *United States v. Roser*, 21 M.J. 883 (A.C.M.R.1986) *pet. denied*, 23 M.J. 182 (C.M.A.1986) (discussion of judicial tailored remedies military judges may employ where necessary to the particular unlawful command influence).

The appellant presented significant favorable presentencing evidence, and never complained of any difficulty in presenting matters or in calling witnesses in extenuation and mitigation. Additionally, there is no evidence that LTC Carlson's remarks went beyond the audience of the four subordinates. Under these facts, we are confi-

dent that the military judge, sitting as the sentencing authority, carefully evaluated all the possible effects of LTC Carlson's remarks, the testimony of the appellant, and the evidence of good character, in reaching an appropriate sentence in the case free from any effects of unlawful command influence. Accordingly, we hold that the unlawful command influence had no effect on the presentencing phase of the appellant's trial.[1]

Turning now to the second assignment of error, the appellant also asserts that the staff judge advocate's addendum to the post-trial recommendation was incorrect and misleading. The appellant contends that the addendum is incorrect and misleading because it stated that the appellant's commander "initiated mandatory separation action IAW in accordance with AR [Army Regulation] 635–200, para. 14–12"; "the accused [appellant] never came to his commander or anyone else at the Cleveland MEPS for help."; and, that "[h]e never sought enrollment in a treatment program, nor admitted he had a drug problem."

■ Even if the reference to the initiation of separation proceedings as being mandatory was erroneous, there is no risk of prejudice to the appellant as a result. Whether the initiation of separation proceedings was mandatory or discretionary, the appellant's commander chose to initiate separation proceedings rather than refer the appellant for counselling in the Alcohol and Drug Abuse Prevention and Control Program. We find the characterization is inconsequential. Whether separation was required or not, the appellant's commander chose elimination rather than rehabilitation. This action was within the discretionary purview of the appellant's commander.

■ The contentions by the appellant that the addendum incorrectly stated that he never sought help for his drug addiction from either his commander or anyone else at the unit are also without merit. These

---

1. We commend the military judge in this case for his most judicious handling of this difficult and delicate matter and the tailoring of the remedies to cleanse the chilling effect of LTC Carlson's actions.

statements are fully supported by evidence in the record and are not new matter.

We have examined the assertion raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find it to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge ARKOW concur.