**UNITED STATES, Appellee,**

v.

**Warrant Officer One Tommy R. RHULE, United States Army, Appellant.**

**ARMY 9701613.**

U.S. Army Court of Criminal Appeals.

19 May 2000.

For Appellant: Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Leslie A. Nepper, JA; Captain Patricia A. Lewis, JA (on brief); Colonel Adele H. Odegard, JA; Major Scott R. Morris, JA; Major Jonathan F. Potter, JA; Captain Sean S. Park, JA (on brief on specified issues).

For Appellee: Colonel Russell S. Estey, JA; Captain Mary E. Braisted, JA (on brief); Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Captain Mary E. Braisted, JA (on brief on specified issues).

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

## OPINION OF THE COURT

VOWELL, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of six specifications of making and uttering worthless checks totaling over $17,-000.00 with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a [hereinafter UCMJ]. The convening authority approved the ad-

judged sentence of a dishonorable discharge and confinement for nine months.

The case initially came before this court for review under Article 66, UCMJ, 10 U.S.C. § 866. In a single assignment of error, the appellant asked us to order a new action because the convening authority allegedly received incorrect information about the scope of the appellant's misconduct. Our initial review of the record suggested an additional area of concern: that the appellant's forum selection may have been the product of a *sub rosa* agreement. We therefore specified two issues,[1] ordered the trial counsel and trial defense counsel to submit affidavits, and directed appellate counsel to submit supplemental briefs addressing the specified issues. The trial counsel and trial defense counsel both submitted affidavits; the appellant also elected to submit an affidavit addressing his knowledge of this issue. Based on the affidavits, the appellant asks that we set aside and dismiss the charges, or, in the alternative, order a post-trial hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

Regarding the original assignment of error, we find no merit to the allegation that the convening authority was misadvised about the scope of the appellant's misconduct, as we find the information provided was correct. As to the specified issues, we find that the trial counsel, trial defense counsel, and the appellant did enter into a *sub rosa* agreement with regard to the appellant's forum selection. However, we find no prejudice, as the appellant was aware of his forum selection options and made a knowing, voluntary, and intelligent choice of a bench trial. Both the assignment of error and specified issues warrant discussion.

## DISCUSSION

### I. The Sub Rosa Agreement

#### A. Facts

The appellant was a noncommissioned warrant officer assigned to veterinary technician duties at Fort Clayton, Panama. He maintained a bank account with Eisenhower National Bank in San Antonio, Texas, where he and his family had previously been stationed. Early in his Panama tour, he began having problems with dishonored checks. Over a period of approximately twelve months, the appellant wrote and uttered checks totaling in excess of $30,000.00 without sufficient funds in his bank account to cover them.[2] Many of these checks were presented to the bank on more than one occasion. At subsequent presentments, some of the checks were honored because recent deposits of funds in the account raised the account balance sufficiently to cover the checks. Many of the checks, however, were returned to the payee. The dishonored checks that the appellant was charged with writing were grouped by the payee into the three specifications of Charge I and the three specifications of Additional Charge I.

In addition to the six specifications of making and uttering worthless checks under Article 123a, UCMJ, of which he was convicted, the appellant was arraigned on charges of larceny (two specifications) and forgery (one specification), in violation of Articles 121 and 123, UCMJ, 10 U.S.C. §§ 921 and 923. Pursuant to a pretrial agreement, the appellant requested trial by military judge alone. For each of the six bad check specifications, he entered pleas of guilty to the lesser included offense of making and uttering worthless checks by dishonorably failing to maintain sufficient funds in his account to pay them, in violation of Article 134, UCMJ, 10 U.S.C.

1.
ISSUE I
WAS THE TRIAL COUNSEL'S DISMISSAL OF CHARGE II AND ITS SPECIFICATIONS AND ADDITIONAL CHARGE II AND ITS SPECIFICATION IN ANY WAY CONTINGENT UPON THE APPELLANT'S ELECTION OF TRIAL BY MILITARY JUDGE ALONE?

ISSUE II
IF A SUB ROSA AGREEMENT EXISTED, WERE THE SUBSTANTIAL RIGHTS OF THE APPELLANT PREJUDICED THEREBY?

2. Prosecution Exhibit 3, containing monthly statements from the appellant's bank from August 1996 to August 1997, establishes that checks totaling over $30,000.00 were dishonored.

§ 934. He entered pleas of not guilty to the charges of larceny and forgery.[3]

During the providence inquiry, the appellant made a number of statements inconsistent with his pleas. These statements primarily concerned his belief that, at the time he wrote the checks, they would be honored by his bank pursuant to a preexisting overdraft protection agreement. After affording the appellant an opportunity to consult with his defense counsel, the military judge conducted further inquiry. As the appellant continued to indicate his belief that the overdraft protection agreement he had with his bank should have covered the checks, the military judge announced that he found the appellant's pleas to be improvident. Counsel for both sides agreed, and the military judge entered pleas of not guilty for the appellant to all the charges and specifications.

Recognizing that his refusal to accept the appellant's pleas had changed the nature of the trial, the military judge recessed the court to give counsel for both sides time to consider their options. Their decision on how to proceed was complicated by the fact that the trial judge was in Panama on temporary duty. Any delay might mean the court-martial would be postponed for several weeks and might involve a new judge being assigned to the case. Additionally, as the affidavits of counsel indicate and as later testimony at trial confirmed, the appellant's check-writing had continued, unabated by the pending court-martial. The possibility that additional charges would be preferred during any trial delay was a matter of concern to the trial defense counsel.[4]

When the military judge called the court to order approximately one-half hour after he had rejected the appellant's guilty pleas, the judge again offered the appellant the opportunity to make any motions. The following colloquy ensued:

DC: Your Honor, if it is permissible, if you could ask the government if they have any motions prior to me making any motions? Mine are dependant [sic] upon them.

MJ: _ Government, do you have any motions?

DC: Excuse me, Your Honor, have you received the judge alone form yet?

MJ: Well that was the next thing I was going to take up, I can do that now if you like.

DC: Yes, sir.

The military judge ascertained that the appellant's earlier election of trial by military judge alone was a requirement of the offer to plead guilty. After ensuring that the appellant understood the earlier advice as to forum, the judge offered the appellant the opportunity to change his forum selection. After consultation with his defense counsel and further explanation by the military judge of the appellant's options, the appellant again requested trial by military judge alone.

The military judge assured the appellant that he would not consider any statements the appellant made during the course of the providence inquiry, and then provided him the opportunity to consult again with his defense counsel. The military judge then granted the appellant's request for trial by military judge alone.

Immediately after dating and signing the approval for trial by military judge alone, the military judge again raised the issue of motions. The trial counsel then responded: *"Pursuant to your granting of the request to be tried by military judge alone,* the government moves to dismiss Charge II and its specifications and additional Charge II and its specifications [sic]"[5] (emphasis added).

---

3. The larceny specifications alleged theft of the funds the appellant received by writing some of the checks to the post banking facility. The forgery specification alleged that the appellant fabricated a letter allegedly from his bank indicating that some of his checks were dishonored as the result of the bank's error.

4. While any new additional charges could not be referred to the same court-martial for trial over

the appellant's objection, *see* Rule for Courts–Martial 601(e)(2), whether tried separately at a new court-martial or joined with the existing charges before the court-martial already in progress, new charges would likely increase any sentence the appellant would otherwise receive.

5. Additional Charge II had only a single specification.

After clarifying that the government was moving to dismiss all the charges to which the appellant had earlier entered pleas of not guilty, the military judge asked the defense for any objections. Understandably, the defense had none. After granting the government's motion, the only charges remaining before the court were the worthless check offenses (Charge I and Additional Charge I) under Article 123a, UCMJ.

When the government indicated it was ready to proceed to trial immediately on the contested specifications, the defense counsel indicated that he had no motions. After opening statements, trial on the merits began.

During the presentation of his case in chief, the trial counsel introduced the letter purportedly from the appellant's bank that had been the basis for the dismissed forgery specification, and established that the document was not genuine. In the course of proving the charged offenses of making and uttering worthless checks with intent to defraud, the trial counsel also established all the elements of the larceny offenses that he had earlier moved to dismiss. The trial counsel also introduced several checks written by the appellant without sufficient funds that were not included in the charges, as evidence of the appellant's intent to defraud. Under cross-examination, the appellant admitted writing two checks, post-dated for the date his court-martial was scheduled to begin, as part of a pending car purchase.

### B. Post–Trial Affidavits

Our reading of the portions of the record of trial quoted above led us to suspect that there was a connection between the government's dismissal of charges and specifications that it could easily have proven and the appellant's election of trial by military judge alone. Accordingly, we directed the trial counsel and trial defense counsel to submit affidavits concerning a possible *sub rosa* agreement. *See United States v. Rosario*, 13 M.J. 552, 553 (A.C.M.R.1982) (approving post-trial affidavits as an appropriate means to determine the existence of *sub rosa* agreements). Their affidavits, which are not in conflict, reflect that a *sub rosa* agreement did exist to dismiss the larceny and forgery

offenses in exchange for the appellant's re-election of trial by military judge alone and for proceeding to trial that same day.

Captain (CPT) D, the trial counsel, explained that, while he was ready to prove his case with the witnesses he had available, assembly of a court-martial panel would have required some time. That would have necessitated rescheduling the trial for a later date when a military judge would be available to travel to Panama. While CPT D recognized that he could prefer additional charges in the interim, he felt that it was in the government's and the appellant's best interest to proceed immediately with the trial, and thus agreed to dismiss the larceny and forgery offenses in exchange for the judge alone forum selection and immediate trial.

The affidavit of the trial defense counsel, CPT S, reflects that during the recess after the military judge rejected the appellant's guilty pleas, CPT S discussed the appellant's options with him. Although the initial election for trial by military judge alone was made pursuant to the pretrial agreement, CPT S believed, based on his discussions about the military judge's reputation with other defense counsel, that trial by military judge alone was still the better option. Captain S explained to his client that his research indicated that this military judge would be more inclined to adjudge a lenient sentence under the facts of the appellant's case than would a court-martial panel. A delay might mean another judge would be assigned to the case. Captain S was also aware of the strong possibility that additional charges would be preferred if the case were to be delayed. Sensing that the government was eager to proceed to trial immediately, and concerned about the possibility of additional misconduct coming to light, CPT S decided to press the government for concessions. He and his client thereafter accepted the government's agreement to dismiss certain charges in exchange for the appellant's election of trial by military judge alone.

The appellant also submitted an affidavit addressing the *sub rosa* agreement issue. It reflects some confusion on the part of the appellant concerning the pretrial and trial events and some general dissatisfaction with

the quality and frequency of communication between the appellant and CPT S, but the appellant does not allege that CPT S provided ineffective assistance. The appellant noted that most of the discussion surrounding the agreement to request trial by military judge alone in exchange for the dismissal of certain specifications was conducted between CPT S and CPT D, although he could hear the discussion. He agreed that CPT S then talked with him and recommended that they proceed to trial by military judge alone.

The appellant's affidavit reflects his concern about this decision. The appellant admitted that CPT S informed him of what CPT S had learned about the military judge's reputation, which the appellant described as "soft," and averred that CPT S told him a panel would "roast" him. The appellant indicated that he agreed to accept his defense counsel's advice, but remained conflicted about the decision. While the appellant was aware that the government had agreed to drop some of the charges in exchange for the forum selection, he stated that he felt this was only fair as "I was innocent in the first place and this whole court-martial was a mistake." He concluded his affidavit by stating that he voluntarily chose trial by military judge alone based on his defense counsel's advice, but that in his heart, he wanted his case heard by a panel.

## C. Analysis

The appellant's affidavit reflects the problem with *sub rosa* agreements in general, but particularly so with regard to agreements involving waivers of trial rights. When agreements between the parties to the trial involve such a waiver, a searching inquiry by the military judge regarding the waiver permits conflicts, such as those the appellant obviously experienced, to be exposed on the record and resolved. When the military judge is not informed of the existence of such agreements, his inquiry is much more abbreviated than it might otherwise be. Based on a belief that the forum election is a free exercise of the appellant's right to select the trial forum, the military judge's inquiry necessarily focuses on the appellant's understanding of his options, rather than on what may have motivated the selection.[6]

Pretrial agreements are governed by Rule for Courts–Martial 705 [hereinafter R.C.M.]. Because pretrial agreements generally arise in the context of a guilty plea, the appellate litigation regarding them has focused on their impact on the plea and providence inquiry. However, neither R.C.M. 705 nor military practice limits pretrial agreements to guilty pleas or confessional stipulations. *See, e.g., United States v. Williams,* 13 M.J. 843 (A.C.M.R.1982) (*sub rosa* clemency agreement was not part of plea agreement). Indeed, "pretrial" agreements may be reached while a trial is in progress. *See United States v. Walker,* 34 M.J. 264, 265 (C.M.A. 1992). Rule for Courts–Martial 705(c)(2)(E) specifically permits pretrial agreements in which the accused waives the right to trial before court members, so long as the accused freely and voluntarily agrees to do so. *See* R.C.M. 705(c)(1)(A) (terms or conditions in a pretrial agreement must be made voluntarily). As part of a pretrial agreement, the convening authority may agree to withdraw charges and specifications from a court-martial, *see* R.C.M. 705(b)(2)(C), and may dismiss the withdrawn charges, *see* R.C.M. 705(b)(2)(C) discussion. The substance of

---

**6.** Under the circumstances of this case, we do not believe that returning the case for a *DuBay* hearing would provide any greater clarity than that already provided by the record and the affidavits of counsel and the appellant. The appellant's affidavit reflects his ambivalence about his options, but clearly reflects his voluntary agreement to elect trial by military judge alone pursuant to his counsel's advice. That advice included the concessions that the government was willing to make in order to proceed immediately to trial before military judge alone. In their affidavits, CPT S and CPT D disclosed that they discussed the case with each other prior to preparing their affidavits, but neither discussed the case with the appellant. On the basis of this "collaboration" between the two trial attorneys, the appellant now asks for a *DuBay* hearing to judge the credibility of the witnesses and to find facts. All three affidavits provide similar accounts of what transpired during the trial. Finding no conflicts among the three affidavits, we decline the opportunity because a post-trial hearing is unlikely to add anything of substance to the affidavits before us. *See United States v. Ginn,* 47 M.J. 236 (1997); *cf. United States v. Sherman,* 51 M.J. 73 (1999) (*DuBay* hearing was required where affidavits raised a factual dispute about the existence of a *sub rosa* agreement not to raise an unlawful command influence motion).

the agreement in this case—dismissal of certain charges and specifications in exchange for the appellant electing trial by military judge alone—thus fell squarely within the terms and conditions permitted by R.C.M. 705.

This agreement, however, was not in writing, which is required by R.C.M. 705(d)(2). *See United States v. Bartley*, 47 M.J. 182, 186 (1997). Because the affidavits in this case are consistent, we have no difficulties in ascertaining to what the parties agreed. Other cases in which the agreement was unwritten have generated problems in interpretation. *See United States v. Mitchell*, 15 M.J. 238 (C.M.A.1983).

The more serious problem is that the agreement was not disclosed at trial. Although R.C.M. 705 does not explicitly provide that *pretrial agreements* must be disclosed to the military judge, *plea agreements* must be disclosed. *See* R.C.M. 910(f); *see also United States v. Cooke*, 11 M.J. 257, 260 (C.M.A. 1981); *United States v. King*, 3 M.J. 458, 459 (C.M.A.1977); *United States v. Green*, 1 M.J. 453, 456 (C.M.A.1976). The military judge is required to conduct an inquiry into any pretrial agreement in the nature of a plea agreement, in order to ascertain that the accused understands the agreement and to ensure that the parties have agreed to its terms. *See Green*, 1 M.J. at 456; R.C.M. 910(f).

While there is no specific statutory prohibition or other restriction in the *Manual for Courts–Martial*, United States (1995 ed.) [hereinafter *MCM*] against undisclosed agreements that are not also plea agreements, *sub rosa* or so-called "gentlemen's agreements" have been condemned in a number of opinions. *See, e.g., Mitchell*, 15 M.J. at 239 n. 2 (*sub rosa* understandings are "not an accepted method of practice at courts-martial"); *United States v. Corriere*, 24 M.J. 701 (A.C.M.R.1987); *United States v. Myles*, 7 M.J. 132 (C.M.A.1979).

The failure of the *MCM* to explicitly require an inquiry into pretrial agreements other than plea agreements is understandable, because the vast majority of these agreements arise in conjunction with a guilty plea. Until the 1984 revisions, the *MCM* did not even specifically authorize plea agreements.

The pre–1984 rules regarding the nature and scope of any inquiry into such agreements, and limitations on what terms and conditions were permissible, were therefore judge-made and refined by appellate litigation.

In *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237, 1972 WL 14083 (1972), our superior court suggested three reasons for condemning *sub rosa* agreements: the accused might be unaware of the agreement at all; he might be unaware of exactly what he is waiving; and the agreement might impact public policy concerns by impermissibly waiving issues central to a fair trial. Our superior court also indicated that the lack of judicial scrutiny was a concern: "The understanding ... was contrary to public policy and all the more insidious since, being unrecorded, it was ostensibly hidden from the light of judicial scrutiny." *Troglin*, 44 C.M.R. at 242. Likewise, a *sub rosa* agreement might circumvent the convening authority and bind him, contrary to his wishes. *See, e.g., United States v. Manley*, 25 M.J. 346, 348 (C.M.A.1987); *Satterfield v. Drew*, 17 M.J. 269, 271 (C.M.A.1984).

Nevertheless, our court has stopped far short of a per se rule requiring corrective action in all cases involving *sub rosa* agreements. Rather, we have examined how the agreement and its concealment have affected the trial. *See Corriere*, 24 M.J. at 706–07; *Williams*, 13 M.J. at 845; *Myles*, 7 M.J. at 133; *see also United States v. Miller*, 48 M.J. 790, 794 (N.M.Ct.Crim.App.1998) (refusing to require corrective action in spite of an undisclosed agreement to elect trial by military judge alone and to forgo challenge to assigned judge in exchange for agreement not to proceed on additional charges). In *Mitchell*, 15 M.J. at 240, our superior court conducted this same examination.

We recognize that, in the "give and take" of preparations for any criminal trial, counsel may come to common understandings. We do not wish to discourage counsel from discussing the issues and arriving at mutually agreeable decisions. Nor do we wish to discourage counsel from agreeing to contest at trial only those issues that are truly in dispute and central to the fact-finding process.

What we do wish to discourage is the formation of secret or undisclosed agreements that involve such terms or conditions as those listed in R.C.M. 705(c)(2).

■ Waiver of constitutional, statutory, or procedural rights of an accused should not be done in secret, not only for the protection of the accused, but also to enhance public confidence in the integrity of the military justice system. *Cf. Green,* 1 M.J. at 456. While we will continue to test the impact of *sub rosa* agreements for prejudice to the substantial rights of the accused pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a), when agreements are disclosed on the record and discussed by the accused and the military judge, prejudice is much less likely to be found. And, demonstrating a voluntary, knowing, and intelligent waiver of rights is more easily done at the time of trial than through appellate affidavits years later.[7]

We also note that R.C.M. 705(d)(3) vests convening authorities—not trial counsel—with the "sole discretion" to accept or reject a proffered pretrial agreement. While a staff judge advocate or other government representative may sign a pretrial agreement on behalf of a convening authority, R.C.M. 705(d)(3) requires the decision to be that of the convening authority. A trial counsel who acts without actual authority to bind the convening authority to the terms and conditions of a pretrial agreement does so at his or her own peril.

■ The appellant's case is complicated by the rejected guilty plea. It is certainly not error per se for a trial judge who has rejected a guilty plea to hear the same case as the trier of fact. *See United States v. Bray,* 49 M.J. 300 (1998); *United States v. Winter,* 35 M.J. 93 (C.M.A.1992). Our court, however, has expressed a preference for recusal in such cases, and if the accused elects

to continue before the same trial judge, the military judge should obtain a waiver from the accused. *See United States v. Cockerell,* 49 C.M.R. 567, 574, 1974 WL 14121 (A.C.M.R.1974). While the military judge did conduct an appropriate inquiry of this appellant after informing him that the military judge would not consider anything that the appellant had said during the providence inquiry, we believe the inquiry would have been more searching, had the judge known of the *sub rosa* agreement.

■ Previously, this court has set aside a sentence, based on an agreement proposed by the government that required the appellant to waive the right to be sentenced by members in exchange for the withdrawal of additional charges. *See United States v. Young,* 35 M.J. 541 (A.C.M.R.1992). *Young* was decided prior to the 1991 amendments to R.C.M. 705, which authorized either party to propose terms and conditions. We do not believe that *Young* represents the current state of the law, and expressly decline to follow it. We see no compelling reason for prohibiting a waiver of the right to trial on the merits before members and an agreement for immediate trial, in exchange for the dismissal of some of the referred charges, while permitting a waiver of the right to be sentenced by court members in a guilty plea in exchange for a sentence limitation, *see United States v. Andrews,* 38 M.J. 650 (A.C.M.R.1993). Both pretrial agreements contain permissible terms and conditions according to R.C.M. 705, and both work to reduce the penalty that an accused faces. Neither pretrial agreement is inconsistent with Article 16, UCMJ, 10 U.S.C. § 816. Waiver of trial by members is not waiver of a constitutional right. *See United States v. Schmeltz,* 1 M.J. 8, 12 (C.M.A.1975). The selection of a trial forum is, nonetheless, an

---

7. In a guilty plea inquiry, an Army military judge following the trial guide is prompted to ask counsel and the accused if there are any pretrial agreements. *See* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, p. 21 (30 Sept. 1996) [hereinafter Benchbook]. During the discussion of the plea agreement, the military judge is likewise prompted to ask if the written agreement encompasses all the understandings of the parties. *Id.* at 22, 25. In a

contested trial, the trial guide does not prompt any inquiry into the existence of pretrial agreements. Military judges and the drafters of the Benchbook might find it advisable to modify the trial guide to ask about any unwritten agreements in each case. Judges should be particularly cautious to inquire when, as here, the statements of counsel strongly suggest the existence of some *quid pro quo.*

important choice personal to an accused. *See generally United States v. Townes*, 52 M.J. 275, 276–77 (2000).

■ In this case, we are satisfied that the appellant knew what he was waiving, that he knew what he was obtaining in exchange for his waiver, and that the decision to waive his right to trial by court members was, indeed, his voluntary decision. While we are confident that the military judge would have conducted a more tailored inquiry had he been aware of this bargain, we find that the record, including the post-trial affidavits, clearly establishes a voluntary, knowing, and intelligent waiver that was not the product of any governmental overreaching. *See Corriere*, 24 M.J. at 707 (the appellant's waiver of pretrial motions in exchange for a favorable sentence limitation held to be "a freely conceived defense product, in the best interests of the accused," and part of a calculated trial strategy).

■ While we find no prejudice to this appellant, we remind counsel that pretrial agreements, like plea agreements, must be disclosed to the military judge.[8] As our superior court noted in *Green*, judicial scrutiny at the trial level will enhance public confidence in the bargaining process and will permit clarification of any ambiguities that "lurk within the agreements." *Green*, 1 M.J. at 456.

## II. Post–Trial Matters

■ Two months after the appellant was sentenced, the detailed defense counsel made a written request to the convening authority for waiver of the automatic forfeitures imposed by Article 58b, UCMJ, 10 U.S.C. § 858b. The next day, the staff judge advocate placed an endorsement on the defense request and recommended that it be disapproved, noting that the appellant had written over $30,000.00 in worthless checks. The convening authority, in a second endorsement addressed to the defense counsel, disapproved the request. This action was undated. The appellant was convicted of having written slightly more than $17,000.00 in worthless checks.

Nearly four months later, after service of the post-trial recommendation on the defense and submission of clemency matters by the appellant, the convening authority approved the adjudged sentence. Neither the appellant nor his counsel complained that the staff judge advocate's assertion in his endorsement to the waiver request that the appellant had written over $30,000.00 of worthless checks was an error.

In his assignment of error before this court, the appellant contends, citing *United States v. Godfrey*, 36 M.J. 629 (A.C.M.R. 1992), that the convening authority must be provided with accurate information in order to fulfill his statutory responsibilities. We agree. We note, however, that the appellant does not make any colorable assertion of possible prejudice from what he characterizes as "incorrect information" (*cf. United States v. Wheelus*, 49 M.J. 283, 289 (1998); *Godfrey*, 36 M.J. at 633–34), nor does he address the issue of waiver (*see* R.C.M. 1106(f)(6)).[9]

---

8. We are satisfied that, in this case, the failure to disclose the existence of the agreement was not a calculated act. Rather, we suspect that counsel were unaware of any requirement to disclose that the appellant's forum selection was the product of a bargain.

9. The Air Force Court of Criminal Appeals requires, as a matter of due process, service on the defense of a staff judge advocate's recommendation to the convening authority containing information not included in an accused's request for waiver of forfeitures. *See United States v. Spears*, 48 M.J. 768, 776 (A.F.Ct.Crim.App.1998), *overruled in part, United States v. Owen*, 50 M.J. 629, 630 (A.F.Ct.Crim.App.1998). Our superior court has recently granted a petition for review on this issue. *See United States v. Brown*, No. 99–0983/

AR, 2000 CAAF LEXIS 199 (C.A.A.F. Feb. 22, 2000). While the record in the case *sub judice* does not contain any certificate of service demonstrating that the staff judge advocate's recommendation was served on the defense prior to the convening authority's action, the recommendation was included as an endorsement to the defense request, and both the request and the recommendation were returned to the defense with the convening authority's action on the request. The appellant has never alleged nonreceipt of the action on his deferment request, and did not make a contemporaneous complaint that the information on his check-writing was inaccurate. Indeed, even now, he stops short of denying that the total amount of his dishonored checks was over $30,000.00.

We do not, however, need to analyze the issues of waiver or prejudice in this case, because we find that the staff judge advocate's information was factually correct. Prosecution Exhibit 3 establishes that the appellant wrote over $30,000.00 worth of checks without sufficient funds in his bank account to cover them. While he was charged and tried for writing substantially fewer checks, it was not error to provide the convening authority information contained in the record of trial that established the true measure of his culpability. *Cf. United States v. Chatman*, 46 M.J. 321 (1997) (contents of record, as opposed to matters attached to the record, are not "new matter" and may be used to support recommendations to the convening authority); *United States v. Clemons*, 35 M.J. 770, 773–74 (A.C.M.R.1992) (evidence in record of trial is not "new matter" and may be commented upon in the staff judge advocate's recommendation).

### DECISION

The findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Judge BROWN concur.